Thomas A. HALLIWELL,
Petitioner-Appellant,

v.

Clayton G. STRICKLAND, Jr., Supt., Florida State Prison, and Jim Smith, Attorney General, State of Florida, Respondents-Appellees.

No. 83–3382.

United States Court of Appeals,
Eleventh Circuit.

Nov. 27, 1984.

Suzanne Armstrong, Stetson Law School, St. Petersburg, Fla., for petitioner-appellant.

Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, Fla., for respondents-appellees.

Before FAY and VANCE, Circuit Judges, and MacMAHON *, District Judge.

FAY, Circuit Judge:

Thomas A. Halliwell appeals from a district court's order dismissing his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Although petitioner raises several matters on appeal, only the due process claim grounded in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), merits full consideration. Because we find there has been no *Brady* violation, we affirm the district court's dismissal of the writ.

Petitioner was tried and convicted of first degree murder in a Florida court in May, 1974. Subsequently, the Florida Supreme Court reduced his sentence to life imprisonment without eligibility for parole for twenty-five years. *Halliwell v. State,* 323 So.2d 557, 562 (Fla.1975). On March 7, 1980, the petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Middle District of Florida. The magistrate, after holding an evidentiary hearing in January, 1981, issued a Report and Recommendation that the petition be dismissed. On May 20, 1983, the district court adopted the magistrate's report and ordered the petition dismissed. Petitioner appeals the dismissal order.

The factual background of this case was summarized by the Florida Supreme Court as follows:

On January 17, 1974, the dismembered body of Arnold Tresch was found in Cypress Creek at Thirtieth Street in Tampa, Florida. The upper torso was in a gar-

bage can taken from a store known as "The Hearth," the name of the business being marked on the container. (Appellant's diving shop, where the crime occurred, is located next door to "The Hearth.") The lower torso and the amputated legs were found nearby in Appellant's footlocker which had been left with Appellant's former wife until after the murder. Appellant had gone to her home and had gotten it to use in disposing of the body. After killing Tresch on the morning of January 9, 1974, Appellant confessed that he stored the body until he could find time to dismember it, conceal the pieces, and remove them to Cypress Creek the following day.

In the early morning of January 18, 1974, he was arrested at the scene of the crime by a Hillsborough County detective; his shop was searched with his written permission, the detective finding blood on the floor as well as bloody human flesh on a saw, a machete and a bloody breaker bar which Appellant said later was the death weapon. After being arrested at his shop and receiving and signing his constitutional *Miranda* warnings he was taken to an interrogation room for over two hours where he was twice given *Miranda* warnings. He was told by policemen that Sandra Tresch, the widow of his victim, and with whom he was involved in an illicit romantic affair, had confessed that she had killed her husband with a spear gun. Appellant requested a visit with her and then confessed that he alone was the killer, having become so angry over the victim's bragging about having beaten Sandra that he beat him to death, unable to stop the fatal blows once he began. Arnold weighed almost two hundred pounds, and Sandra weighed slightly over one hundred pounds; Appellant, also a large man, was a diving instructor who often worked in diving with Arnold and socialized with him and Sandra.

---

* Honorable Lloyd F. MacMahon, U.S. District Judge for the Southern District of New York, sitting by designation.

*Halliwell,* 323 So.2d at 559 (footnote omitted). Subsequent to the trial but prior to sentencing, petitioner's counsel was notified that a pair of bloody women's tennis shoes had been discovered in a large tool box taken from petitioner's dive shop. The magistrate found that the sheriff's deputies had actual knowledge of the shoes as of May 9, 1974,[1] and that petitioner failed to establish that any of those deputies had any knowledge of the existence of those shoes prior to or during the trial. Although defense counsel had not been alerted to the existence of this alleged exculpatory evidence prior to trial (because no one knew it existed), counsel was provided with an inventory of the tangible evidence taken into custody; this list included the tool box containing the bloody shoes. The uncontradicted evidence was that neither the defense nor the prosecution was aware of the existence of the bloody shoes until after petitioner's trial.

Petitioner contends that the prosecutor's failure to disclose the existence of the bloody shoes until after the trial, despite the fact that the prosecution was ignorant of their existence until that time, constitutes a violation of petitioner's due process rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and hence petitioner is entitled to a new trial. Because no one knew the shoes existed until after the trial, petitioner's *Brady* claim rests on the government's alleged negligence in not finding the shoes sooner. We decline the invitation to so broaden the scope of the *Brady* obligation.

In order to establish a *Brady* violation, the petitioner must show "(1) that the prosecution suppressed evidence (2) that was favorable to the appellants or exculpatory and (3) that the evidence was material." *United States v. Blasco,* 702 F.2d 1315, 1327 (11th Cir.) (citation omitted), *cert. denied,* — U.S. —, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983). We find that petitioner

did not meet the first prong of this three part test. This court has noted that *"Brady ... require[s] that the information requested be known to the prosecution."* *United States v. Walker,* 720 F.2d 1527, 1535 (11th Cir.1983) (citing *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)), *cert. denied,* — U.S. —, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984). Additionally, *"Brady* does not require the government to turn over information which, 'with any reasonable diligence [the defendant] can obtain himself.'" *Jarrell v. Balkcom,* 735 F.2d 1242, 1258 (11th Cir.1984) (quoting *United States v. Campagnuolo,* 592 F.2d 852, 861 (5th Cir. 1979)). In the instant case, defense counsel was provided with a copy of the inventory of the evidence taken into custody. It was at least conceivable that defense counsel could have located those shoes himself.

The facts of this case are very similar to those in *Ross v. Texas,* 474 F.2d 1150, 1153 (5th Cir.), *cert. denied,* 414 U.S. 850, 94 S.Ct. 141, 38 L.Ed.2d 98 (1973), where the Fifth Circuit denied the petitioner's *Brady* claim, noting that it was "of the utmost significance ... that neither the prosecutor nor any of his assistants were in possession of the [alleged exculpatory evidence] or were even aware of its existence." Under those circumstances, the court is not concerned about deterring prosecutorial over-zealousness which might produce an unfair trial. *Id.* at 1154. We, of course, realize that the prosecution in the instant case was at least technically in possession of the evidence at issue. However, because no one was aware it existed, *Ross* remains apposite to this case.

Although we recognize that the government may not just assert ignorance of information another branch of the government may have,[2] *see Schneider v. Estelle,* 552 F.2d 593, 595 (5th Cir.1977),[3] in

---

1. This was after the trial but before sentencing.

2. *But cf. United States v. Walker,* 720 F.2d 1527, 1535 (11th Cir.1983) (knowledge of contingency fee arrangement between informant and state officials not imputed to federal prosecutor).

3. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down

this case *no* branch of the government was aware of the existence of the alleged exculpatory evidence until after the trial. Therefore, under the unique circumstances of this case, we find no *Brady* violation has occurred.[4]

■ Petitioner also alleges that the prosecutor's closing argument was unconstitutionally prejudicial, in that it improperly suggested that as a "trained killer", petitioner would be capable of mutilating a body.[5] However, when the prosecutor's comments are evaluated in light of *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), it is clear that they did not violate petitioner's due process rights.[6]

■ Petitioner also raises as error the claim that the prosecutor improperly commented on petitioner's post-arrest silence. This claim is without merit, as petitioner made several statements to the police after his arrest and gave a different version of the story when he took the stand at trial. *See Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980).

Accordingly, the judgment of the district court is AFFIRMED.

prior to the close of business on September 30, 1981.

4. We also agree with the Magistrate and the district judge that it was questionable whether the shoes were exculpatory at all. Although they certainly implicated Sandy Tresch in the murder, they did not necessarily exonerate the petitioner. *See Ross*, 474 F.2d at 1154.

5. Specifically, petitioner objected to the following:

> Think who was more capable of committing this crime. A man who has been in Vietnam with Special Forces training? A man who served honorably? We can't deny that. There is nothing we can do about that. He served honorably his country, and he should be given credit for that; but that does not give him a license to come out and kill somebody, to kill a friend of his over his wife. He does not have a license to do that because I don't care if he had every medal in the world, he does not have a license to do that.
>
> The reason I brought up this about the prior military training is that he has had training in this. He received specialized training. Could a person with that kind of training saw somebody up? How many people would be capable of sawing somebody up.... It would have to be somebody who was trained, somebody who has had training, who could stand something like this.

(R. at 1457–458).

6. In addition, the trial judge pointed out during the prosecution's closing argument that his argument was not to be considered as evidence. (R. at 1428). *See Donnelly*, 416 U.S. at 644, 94 S.Ct. at 1872.