On March 1, 1979, Billy Joe Magwood, the petitioner, shot and killed Coffee County Sheriff Neil Grantham. After his arrest, Magwood was declared an indigent and counsel was appointed to represent him. The petitioner asserted he was not guilty by reason of insanity. On motion of petitioner's counsel, an investigation was instituted concerning the sanity of the petitioner. He was interviewed by two local physicians who testified at trial concerning his sanity. Subsequently, he was transferred to Searcy Hospital for observation and evaluation by a three-member lunacy commission. Following that evaluation, he was also interviewed by Dr. Doug McKeown, a clinical psychologist.
At trial, the defense read into evidence the deposition of Dr. William Rudder, a member of the lunacy commission, who had observed the petitioner for 8 to 10 hours over a 10-month period beginning in July 1979. Dr. Rudder stated that Magwood was a paranoid schizophrenic and in his opinion did not know right from wrong at the time of the offense. The defense offered no further evidence on the issue of insanity.
The state offered the testimony of Dr. Donald Crook, a local physician, who had known the petitioner for 12 years and who had examined him on June 6, 1979, for 30 minutes in preparation for this trial. Dr. Crook testified that petitioner exhibited no signs of schizophrenia. The state also offered the testimony of Dr. Bancroft Cooper, another local physician, who also examined the petitioner on June 6, 1979, for twenty minutes in preparation for this trial. Dr. Cooper indicated that, in his opinion, the petitioner was not insane at the time he examined him.
The evaluations of petitioner's mental condition by the State's witnesses took place in June 1979; the evaluation by the lunacy commission presented by the petitioner took place from July 1979 through April 1980. The case did not come to trial until June of 1981, approximately two years after the initial evaluations were made. In April of 1980, Magwood was removed from Searcy Hospital to the Coffee County jail. The defense on June 26, 1980, made a motion to the court for funds to hire a psychiatrist or psychologist of the petitioner's own choosing to evaluate his sanity; that motion was denied. On April 21, 1981, the court granted a motion by the State to have the defendant examined by Dr. Doug McKeown.
Dr. McKeown testified at trial that, in his opinion, the petitioner knew the difference between right and wrong on the day Sheriff Grantham was killed. *Page 931 
The defendant was found guilty of the capital offense of murder. The jury recommended the death sentence; the trial court, after weighing any aggravating and mitigating circumstances, sentenced the petitioner to death. The Court of Criminal Appeals affirmed the conviction. The case is before this Court on a petition for writ of certiorari, which is granted as a matter of right in cases which impose the death penalty.
The petitioner raises several points of error for our consideration. First, petitioner asserts that it was error for the trial court to deny his motion for change of venue based on prejudicial pre-trial publicity.
Absent a showing of abuse of discretion, the ruling of the trial court on a motion for change of venue will not be disturbed. Speigner v. State, 367 So.2d 590 (Ala.Cr.App. 1978),cert. denied, 367 So.2d 597 (Ala. 1979). The defendant has the burden of showing that he will be unable to receive an impartial trial and an unbiased verdict at the present locale.Speigner, supra.
Absent a showing of actual prejudicial influence upon the jury, the trial court was not in error in refusing to grant a motion for change of venue. Dolvin v. State, 391 So.2d 666
(Ala.Cr.App. 1979), aff'd, 391 So.2d 677 (Ala. 1980). The petitioner rests his assertion of bias on his impressions of public feeling at the time of the trial. Petitioner states in his brief, "Defendant's proof of such prejudicial influence wasonly displayed by the jury's verdict regarding his sanity." (Emphasis added.) Petitioner appears to contend that because the jurors found him to be sane they must have been prejudiced against him. This circuitous reasoning does not constitute a showing of actual prejudice as required by the case law.
Our review of the voir dire examination of the jurors reveals no indication of possible bias. We agree with the Court of Criminal Appeals that the publicity surrounding the crime was strictly factual in nature and was not designed to inflame the community. Further, the trial took place two years after the crime. Even if we considered the publicity prejudicial, clearly the passage of time would diminish any prejudicial effect of the media coverage. See, Speigner, supra. Thus, the Court of Criminal Appeals did not err in holding that the denial of petitioner's motion for change of venue was not in error.
The second point of error raised by petitioner is that the lower court erred in submitting the case to the jury in light of the "overwhelming and uncontradicted" evidence introduced by defendant to rebut the presumption of sanity. This issue was addressed by this Court in Christian v. State, 351 So.2d 623
(Ala. 1977), wherein the Court established guidelines on the insanity defense. The Court reaffirmed the principle that the defendant is presumed sane and that the defendant has the burden of proof on the issue of insanity. The defendant must establish insanity by a preponderance of the evidence and the question is to be determined by the jury, except in cases where the evidence is "overwhelming and uncontradicted." Christian v.State, 351 So.2d at 624. See also, Lee v. State, 246 Ala. 343,20 So.2d 471 (1945).
In the case before us, the question of insanity was submitted to the jury, based upon conflicting testimony given by a series of four expert witnesses. Dr. Crook and Dr. Cooper, both practicing physicians, testified for the State that at the time of their examinations of the defendant in June of 1979 he was sane. Dr. Doug McKeown, a clinical psychologist who examined the petitioner in April of 1981, testified that in his opinion the defendant knew the difference between right and wrong on the day Sheriff Grantham was killed. Finally, the deposition of Dr. Rudder, a psychiatrist, was read at trial. In Dr. Rudder's opinion, Magwood was insane at the time of the killing.
We cannot say that the evidence in this case was overwhelming and uncontradicted on the issue of petitioner's claim of insanity. The trial court was not in error in submitting the question to the jury. *Page 932 
The third point of error raised by petitioner is that it was improper for the court to deny his request to hire a psychiatrist or psychologist of his own choosing. We hold that the claim is without merit, since we agree with the reasoning of the Court of Criminal Appeals and its conclusion that "The trial judge's actions appropriately protected appellant's rights in this regard." Magwood v. State, [Ms. May 18, 1982]426 So.2d 918 (Ala.Cr.App. 1982).
Finally, petitioner argues that the lower court did not properly weigh the aggravating and mitigating circumstances prior to imposing the death penalty. Our review of the record indicates that the court considered the capacity of the defendant, the circumstances surrounding the murder, the prior criminal activity of the defendant, his age at the time of the offense and his emotional state at the time of the offense. We hold that the trial court properly considered any aggravating and mitigating circumstances prior to imposing the death penalty.
The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
All Justices concur.