**Billy Joe MAGWOOD, Petitioner,**

**v.**

**Fred SMITH, Commissioner, Alabama Department of Corrections; Willie E. Johnson, Warden, Holman Unit, Respondents.**

**Civ. A. No. 83–H–760–N.**

United States District Court,
M.D. Alabama, N.D.

March 26, 1985.

J.L. Chestnut, Jr., Selma, Ala., for petitioner.

Charles A. Graddick, Atty. Gen., Ed Carnes, Asst. Atty. Gen., Montgomery, Ala., for respondents.

## MEMORANDUM OPINION
## AND ORDER

HOBBS, Chief Judge.

This cause is now before the Court on a petition for writ of habeas corpus filed by Billy Joe Magwood on July 20, 1983, pursuant to 28 U.S.C. § 2254.[1] Petitioner was convicted of the murder of the sheriff of Coffee County, Alabama and sentenced by the Circuit Court of Coffee County, Alabama to the penalty of death by electrocution. In his petition for writ of habeas corpus and supplemental brief in support thereof, petitioner asserts a total of nine grounds for the granting of said writ. The Court has concluded that eight of these grounds are without merit. Petitioner is entitled to relief on his claim that the existence of certain mitigating circumstances was not properly considered by the trial court in determining its sentence. Accordingly, while this Court finds no error in the adjudication of petitioner's guilt, it is necessary that this cause be remanded to the Circuit Court of Coffee County, Alabama for resentencing consistent with this opinion.

### Background

On June 2, 1981, following the jury's verdict of guilty, the jury fixed the punishment of death after a sentencing hearing before them. On June 30, 1981, after a sentencing hearing before the court, the court sentenced petitioner to death by electrocution. On May 18, 1982, the Alabama Court of Criminal Appeals affirmed petitioner's conviction and sentence and on June 8, 1982, denied his application for rehearing. On January 7, 1983, the Alabama Supreme Court affirmed petitioner's conviction and sentence and on February 11, 1982 denied his application for rehearing. The United States Supreme Court denied petitioner's petition for a writ of certiorari on June 13, 1983 and the Alabama Supreme Court then set his execution date

---

1. At the time the petition was filed in this Court, the petition included some grounds which had not been "exhausted" in the state courts. This Court retained jurisdiction, and such grounds have now been considered and rejected by the state courts.

for July 22, 1983. Petitioner filed a coram nobis petition and application for stay of execution and amended coram nobis petition in the Circuit Court of Coffee County, Alabama and after an evidentiary hearing on said coram nobis petition, said petition and the application for stay of execution were denied on July 18, 1983. On July 20, 1983, petitioner filed the instant petition for writ of habeas corpus and application for stay of execution in this Court. This Court granted a stay of execution on that date.

On March 20, 1984, the Alabama Court of Criminal Appeals affirmed the denial of petitioner's coram nobis petition and denied his application for rehearing on April 24, 1984. On May 25, 1984, having failed to file a petition for certiorari in the Alabama Supreme Court on the denial of the coram nobis petition, petitioner filed a motion for permission to file a late petition for certiorari. Said motion was denied on March 6, 1984. On July 13, 1984, following a status conference held by this Court an order was entered requiring an examination of petitioner at a mental facility to determine whether he is presently insane. Said examination having been completed and the parties having filed their final briefs, this cause is now before the Court for consideration of the merits of the instant petition for writ of habeas corpus.

*Petitioner's Nine Grounds for Relief*

**I.**

Petitioner argues that his Sixth Amendment right to the assistance of counsel was violated by the State's introduction of the testimony of two doctors who petitioner contends examined petitioner on "behalf of the State," while he was in custody and "without notice to appointed counsel ... at a 'critical stage' during the procedures against petitioner."

Petitioner relies on the case of *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) for his position on this issue; however, that case is readily distinguishable. The Alabama Court of Criminal Appeals considered this issue on direct review and issued a thorough written analysis of it. See 426 So.2d 918, 925–927. This Court accepts the state court findings on the issue and deems them to be fully supported by the record.

**II.**

Petitioner next asserts that he was denied a "fair trial and effective assistance of counsel" by the failure of the trial court to appoint an independent expert witness in connection with petitioner's insanity defense. The state courts have considered and rejected this contention. *Magwood v. State*, 426 So.2d 918, 925 (Ala.Cr.App.1982). This Court is also of the opinion that this claim is without merit.

The record indicates that Magwood made a motion to have an independent psychiatric expert appointed (Ex. A at 405–406) and this motion was denied (Ex. A at 477). At a later point in time the State moved to have a further psychiatric evaluation of petitioner due to the passage of time from the earlier examinations. This motion was granted. (Ex. A at 532) Thereupon, petitioner stated to the trial court that the granting of the State's motion would be "to some extent in line with what the defense has requested." Counsel conditioned this acquiescence on being "furnished immediately upon it being available a report from that psychologist or psychiatrist...." (Ex. A at 77–78) This condition was met.

Petitioner contends in his brief that the court provided for "six experts on behalf of the State." The record indicates, however, that three of these six rendered opinions completely favorable to petitioner's defense, and strongly supported petitioner's claim of insanity. (See Ex. A at 555 and at 193.) It is difficult for this Court to imagine expert testimony which could be more helpful to petitioner's cause than that of Dr. Rudder, a psychiatrist, who had been appointed by the trial court to conduct an independent evaluation. His testimony was more persuasive because he was the doctor appointed by the trial court and who was regularly employed by the State to evaluate mental illness.

In *Finney v. Zant,* 709 F.2d 643, 645 (11th Cir.1983), the Court of Appeals reiterated the holding that "indigent defendants are not entitled to" "repeated psychiatric examinations after substantial competent evidence has already been obtained." The court cited with approval a case in which an indigent defendant's motion to employ psychiatrists at the State's expense was denied where his sanity had been evaluated by the State Department of Health. The court there held that the "accused (was) entitled to an impartial ascertainment of his mental condition but not to a battery of experts." *Finney, supra,* at 645 citing *McGarty v. O'Brien,* 188 F.2d 151 (1st Cir.) *cert. denied* 341 U.S. 928, 71 S.Ct. 794, 95 L.Ed. 1359 (1951).

Finally, while this Court is aware of the recent decision in *Ake v. Oklahoma,* —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), it is of the opinion that this case is distinguishable from *Ake.* In the instant case there was expert testimony for both sides on the question of petitioner's sanity at the time of the offense. Dr. Rudder specifically testified that in his opinion petitioner was insane at the time of the offense and the Lunacy Commission report reflected the unanimous opinion of the Commission members that petitioner was presently insane and "probably" insane at the time of the offense. In *Ake* "there was no expert testimony for either side on Ake's sanity at the time of the offense." *Ake* at p. ——, 105 S.Ct. at p. 1091. Furthermore, in the instant case, while petitioner had moved for appointment of his own expert, he later acquiesced in the appointment of an expert pursuant to the State's motion. Finally even if *Ake* were not so substantially distinguishable, this Court is of the opinion that it would not be retroactively applied to this case, which comes before the Court on collateral review. See *Shea v. Louisiana,* —— U.S. ——, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985), and *Solem v. Stumes,* —— U.S. ——, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984) (concurring opinion of Justice Powell).

### III.

Petitioner asserts that "the imposition and carrying out of the death penalty in Alabama, as it relates to blacks, constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments and in violation of the Equal Protection Clause of the Fifth (sic) and Fourteenth Amendments of the United States Constitution." (See petitioner's brief, p. 15–21)

The record indicates that petitioner failed to raise this issue in any state forum; however, rather than considering the application of a procedural default bar to raising this issue initially here, (See *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)), the Court has considered this issue and found it to be without merit. (See *Smith v. Wainwright,* 741 F.2d 1248, 1258 (11th Cir. 1984) for the authority to consider the merits despite a possible procedural default).

The Court notes that neither side has requested an evidentiary hearing on this or any issue raised by petitioner, and respondents have represented to the Court in their brief that "the parties are operating on the assumption that the issues are being submitted to this Court on the basis of the pleadings; the exhibits thereto ... and the November 15, 1984 forensic report." Accordingly, there is no issue here as to whether such a hearing is due to be accorded petitioner to make his showing. *McCleskey v. Kemp,* 753 F.2d 877 (11th Cir.1985) at 893.

In the aftermath of the decision of the United States Supreme Court in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), many states, including Alabama, enacted death penalty statutes which reflected changes intended to correct deficiencies found by the *Furman* court in then existing death penalty statutes. Petitioner relies to a great extent on pre-Furman statistics for his position that the present death penalty in Alabama is racially discriminatory. For obvious reasons the pre-Furman statistics standing alone are

not relevant to a determination of whether the current death penalty and its procedures are racially discriminatory.

Petitioner next relies on a study, which by his own admission, has been rejected after having been found to be "too crude to have any legal significance..." (petitioner's brief p. 18).

Finally, petitioner relies on the Baldus study. In *McCleskey v. Kemp,* 753 F.2d 877 (11th Cir.1985), the Court of Appeals concluded that even if the Baldus study's statistical results were accepted as valid, the evidence therein would still fail successfully to challenge the constitutionality of the system on which Professor Baldus focused his study (Georgia). *McCleskey v. Kemp, supra,* at 898. The rejection of the Baldus study which was based on Georgia statistics in a Georgia case leaves this Court no room to find it constitutionally significant on the question of whether the Alabama statute is being applied in a racially discriminatory manner in Alabama.

Finally, with respect to petitioner's basic proposition that the numbers themselves lead one to the conclusion that the Alabama death penalty is racially discriminatory, this Circuit has consistently applied and reiterated the principle enunciated in *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) that "(A) showing of disproportionate impact alone is not sufficient to prove discriminatory intent unless no other reasonable inference can be drawn." See *McCleskey, supra,* at 892; *Adams v. Wainwright,* 709 F.2d 1443, 1449 (11th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984); *Sullivan v. Wainwright,* 721 F.2d 316, 317 (11th Cir.1983). In *Adams, supra,* at 1449, the court stated that "... only if the evidence of disparate impact is so strong that the only permissible inference is one of intentional discrimination will it alone suffice (to show a violation of the Fourteenth Amendment)." Petitioner has not made such a showing.

### IV.

Petitioner next asserts that the trial judge had a duty, despite the fact that defendant made no such request, to ask questions of the jury venire related to racial prejudice on voir dire. He contends that the failure to do so, considering the context of the instant case was violative of the Fifth and Fourteenth Amendments and reversible error. However, it appears from the record that petitioner never raised this contention at trial, on direct review, in his coram nobis petition, or even in the instant habeas corpus petition. The only vehicle by which it is raised is the instant brief. (Petitioner raises a similar issue in the context of an ineffective assistance of counsel claim for failure by his attorney to ask such questions on voir dire and that will be addressed below.) Furthermore, petitioner has made no showing of "cause" to excuse his failure to properly preserve the issue nor any resulting prejudice. Accordingly, this issue is barred from review in the federal courts. See *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and *Smith v. Wainwright,* 741 F.2d 1248 (11th Cir.1984).

### V.

Petitioner next asserts an ineffective assistance of counsel claim and cites five acts or omissions by counsel which he contends support such a claim.

Petitioner contends that trial counsel rendered ineffective assistance by failing to object to the testimony of Doctors Crook and Cooper. This claim is evidently related to petitioner's *Estelle v. Smith* argument addressed above as no other basis for such an objection has been suggested. The Alabama Court of Appeals addressed petitioner's *Estelle v. Smith* argument and found it to be without merit (See *Magwood v. State,* 426 So.2d 918 (Ala.Cr.App.1982). This Court agrees.

Petitioner next contends that the failure by counsel to "extensively qualify the jury on the issue of race" by asking questions related to race on voir dire in a case such

as this amounted to ineffective assistance of counsel.

This is also an issue which has been considered by the state court pursuant to a hearing on petitioner's coram nobis petition. Following said hearing the trial judge found that counsel's reasons for not specifically questioning prospective jurors on racial prejudice were "proper, sound and within common sense of any reasonable attorney." See Ex. "P" at 179–180. Defendant's counsel at the coram nobis hearing testified to his general familiarity with the jurors in his county, and in his opinion by asking such a question he would have risked "(emphasizing) a notion to the jurors" that might not have been in their minds. (Ex. P at 72–73) As the Court recognized in *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1982), there are "countless ways to provide effective assistance in any given case(;)" and this Court has nothing before it which would rebut the presumption that counsel's conduct on this issue was a sound strategic decision which falls "within the wide range of reasonable professional assistance." *Id.*

■ Petitioner's third argument under his ineffectiveness claim relates to counsel's "(failure) to have a subpoena or bench warrant issue(d) for its primary witness, Dr. Rudder." This claim is best analyzed in two parts. First, with respect to having a bench warrant issued, that was clearly not a matter within counsel's control. Moreover, in considering the issue on appeal the State Court of Criminal Appeals found the trial court was not in error in refusing to issue a bench warrant for Dr. Rudder. See *Magwood v. State, supra,* at 927–928. Secondly, with respect to the subpoena, the record indicates that a subpoena for Dr. Rudder's appearance at trial was issued on May 26, but counsel had not ascertained at the time of trial whether Dr. Rudder had actually been served. *Magwood v. State, supra,* at 927. The court endeavored to determine whether Dr. Rudder had been served during the trial but was unsuccessful. Its decision not to issue

a bench warrant was based on its understanding of Ala.Code § 22–50–22 (1975), which provides that a witness such as Dr. Rudder cannot be compelled to attend trial as an expert witness upon satisfying certain conditions. While Dr. Rudder had not satisfied the statute's formal requirements, the court concluded that a bench warrant would be inappropriate under the circumstances. Counsel based their decision not to seek a continuance because of that ruling and Dr. Rudder's deposition testimony was read aloud to the jury. (Counsel did at first informally ask for a continuance to see whether Dr. Rudder had been served. See Ex. A at 190.) His deposition testimony was as favorable to petitioner as could be hoped for from any trial testimony, though the testimony of a live witness may have more impact than deposition testimony.

■ Petitioner's fourth claim on this issue relates to counsel's "(failure) to subpoena the other two examining physicians of the Lunacy Commission." As respondents correctly point out in their brief, petitioner clearly has the burden of proving facts surrounding its contentions of ineffective assistance of counsel in such a circumstance as this. See *United States v. Cronic,* —— U.S. ——, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984). Petitioner has failed to meet this burden and this Court has no way of knowing whether those two doctors had been interviewed at length or if deposed whether they would have been as favorable or as emphatic in support of petitioner's claim of insanity as Dr. Rudder, whether they had any major role in evaluating petitioner, or whether they too might have claimed a statutory exemption. At any rate, although the parties have been through a full coram nobis hearing, there is nothing in the record pointed to by petitioner which supports his contention or which indicates that the failure to subpoena the two Commission members was in fact prejudicial. The unanimous report reflecting the opinions of these two doctors as well as that of Dr. Rudder that defendant was insane when they examined him was admit-

ted into evidence. See Ex. A at 555. Simply stated, the Court is unable to find counsel to have rendered ineffective assistance in connection with this issue.

Finally, the Court finds there to be no merit in petitioner's contention that counsel failed to conduct a "substantial investigation" into petitioner's insanity defense. Again, petitioner has failed to meet the burden clearly recognized in *United States v. Cronic, supra*, in connection with this assertion. Furthermore, the record from the coram nobis hearing indicates that counsel took several steps in pursuing this line of defense. Counsel obtained and reviewed petitioner's VA hospital records but determined that they were more helpful to the prosecution than to petitioner (Ex P at 75). Counsel considered using petitioner's mother and sister to testify at the sentencing hearing but was evidently persuaded by some information he obtained that such testimony would not be helpful (Ex. P at 78). At any rate, counsel was prevented from testifying at the coram nobis hearing as to his reasons for not using the testimony of petitioner's mother and sister by petitioner's objection to the divulgence of a "privileged communication" (Ex. P at 79) between petitioner and trial counsel. It is clear from the record that trial counsel understood the insanity defense to be petitioner's only defense in this case. All of counsel's actions in preparation for and during the course of the trial and the sentencing hearing were directed toward presenting that defense. It is possible that other counsel might have presented some or all of that which counsel calculated would not be helpful to defendant, but these are the kind of strategic decisions that are judgment calls for the trial attorney. *Strickland, supra.* Accordingly, the Court finds no merit in petitioner's ineffective assistance of counsel claims.

## VI.

■ Petitioner's sixth claim is that Ala. Code § 15–16–23 (1975) is unconstitutional on its face and as applied. This section of the Code requires the suspension of the execution of a death sentence for a person found to be insane by the trial court at any time after conviction and sentence.

On July 13, 1984, pursuant to petitioner's plea to the court of present insanity, this Court issued an order for petitioner to be transferred to an appropriate medical facility for an evaluation of his present mental condition. On November 26, 1984, the Forensic Evaluation Report which set forth the results of said evaluation was filed with this Court.

Petitioner raised the contention that § 15–16–23 should be applied to him with the state court in his coram nobis proceeding. Such a contention was rejected by that court which found that "[T]he totality of the evidence conclusively shows (petitioner) is not presently insane." (See Exhibit P at 180.) Pursuant to such a claim this Court directed that the aforementioned evaluation of petitioner's mental condition be conducted so as to evaluate petitioner with respect to the specific factors the court in *Gray v. Lucas*, 710 F.2d 1048 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983) set forth as the standard for present insanity if there were to be a constitutional right not to be executed while presently insane. This standard was agreed upon by the parties in this case as the standard for petitioner's evaluation. Based upon the findings in said Forensic report, petitioner's claim of present insanity has been rejected. Accordingly, it is the opinion of this Court that petitioner lacks standing to challenge the constitutionality of § 15–16–23 for, having been found presently sane, he has no personal stake in the outcome of such a challenge; nor could he show that he has sustained or is immediately in danger of sustaining some direct injury as a result of the procedures he attacks in said statute. It has no application to him as a person found presently sane. Since plaintiff lacks standing to raise this issue, this Court does not consider the merits of this contention.

## VII.

Petitioner next contends that the jury and the court failed to properly consider

the mitigating circumstances in sentencing petitioner.

Pursuant to the relevant Alabama Code provisions, petitioner was sentenced in this case by the court after hearings before the trial jury and before the court. The jury rendered an advisory verdict of a sentence of death and the court rendered that sentence.

During the hearing before the sentencing jury the State presented no witnesses. Petitioner called one witness, his second cousin, whose short testimony was essentially that she had never known petitioner to have a propensity for violence and that petitioner had often complained of pain from the injuries suffered in Vietnam. Counsel then made a short argument to the jury. The State submitted one aggravating circumstance, that the crime consisted of the murder of a sheriff on duty or because of some official or job related act or performance of said sheriff (See Ala. Code § 13–11–2(5) (1975)). Defendant's counsel argued to the jury that while they had failed to find Magwood insane, they could still sentence him to life without parole based on his mental condition. He urged them to listen carefully to the Court's charge with respect to mitigating circumstances and determine if any applied.

The court in its charge listed the statutory mitigating circumstances for the jury and explained the difference between "insanity" and the mitigating circumstances related to the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law (§ 13–11–7(6)).

On June 2, 1981, the jury then returned its advisory verdict fixing the punishment of the defendant at death. Pursuant to the relevant Code provisions, a sentencing hearing was held before the court on June 9, 1981. The State submitted its position to the court on the evidence at trial and rested. Defendant reoffered into evidence the deposition of Dr. Rudder and the cross-examination testimony of Dr. McKeown and rested. Argument by both sides followed with each side arguing their respective positions with respect to defendant's mental capacity. The case was then submitted to the court for sentencing and on June 30, 1981, the court sentenced Magwood to the penalty of death.

In his finding, the trial court noted that none of the aggravating circumstances set forth in Code of Ala. § 13–11–6 (1975) was present, but found "aggravation" in that "Magwood unlawfully, intentionally, and with malice aforethought killed Coffee County Sheriff Neil Grantham by shooting him three times at close range with a pistol while Grantham was on duty and because of official job related acts as Sheriff of Coffee County, Alabama." (See § 13–11–2(5).) (Ex. A at 365) The trial judge found two mitigating circumstances, that Magwood had no significant prior criminal history (§ 13–11–7(1)), and that he was twenty-seven years old at the time of the crime (§ 13–11–7(7)). He then stated:

... These mitigating circumstances exist. The jury in the guilty phase of the trial rejected the not guilty by reason of insanity plea. The Court concludes Magwood did not kill Grantham under influence of extreme or emotional disturbance and when the three bullets were fired into the body of Grantham, Magwood had the capacity to appreciate the criminality of his act ... (Ex. A at 366)

Code of Ala. § 13–11–7 (1975) provides in pertinent part:

Mitigating circumstances shall be the following: (2) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance; ...

(6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

■ The trial judge in his findings specifically rejected the existence of these two mitigating circumstances as has been indicated and rendered sentence accordingly. It is the opinion of this Court that such a factual determination is not fairly sup-

ported by the record in this case in light of the overwhelming evidence regarding Magwood's mental condition. Accordingly, pursuant to 28 U.S.C. § 2254(d)(8), it is the duty of this Court to remand this case for sentencing. While the Court notes that able and experienced state judges in this case have considered the issue of mitigating circumstances and have affirmed (see *Magwood v. State,* 426 So.2d 918, 925 (Ala. Cr.App.1982) and *Ex parte Magwood,* 426 So.2d 929, 932 (Ala.1983)), this Court has carefully scrutinized this record and can only conclude that the evidence of the existence of the mitigating factors relating to Magwood's mental state is so overwhelming as to make the trial court's rejection of their existence clearly erroneous.

The expert testimony in this case which related to petitioner's mental condition came from four sources. Three doctors testified on behalf of the State. Dr. Crook, a general practitioner, testified that he interviewed petitioner for approximately thirty minutes and in his opinion petitioner was sane at that time (June 6, 1979). He added, however, that he would defer to the opinion of a psychiatrist who had spent more time examining petitioner. (Ex. A at 258) Dr. Crook also stated that he had prescribed a "major tranquilizer" for petitioner's nervousness in 1976. Dr. Cooper, a general practitioner, testified that he spent approximately fifteen to twenty minutes with petitioner and while in his opinion petitioner was sane at the time of the interview (June 6, 1979), he could not form an opinion as to whether petitioner could have been paranoid schizophrenic on the day of the offense (Ex A at 275). Finally, Dr. McKeown, a clinical psychologist, testified that while in his opinion petitioner knew right from wrong on March 1, 1979 (the day of the offense), he conceded that at the time he examined petitioner on April 23 and 27, 1981, petitioner was suffering from a disease of the mind which he diagnosed as paranoid schizophrenia (Ex. A at 285). He further admitted that such a disease can be severe enough so that one suffering from it might not know the difference between right and wrong. When Dr. McKeown examined petitioner, petitioner had previously been treated with strong medication for months while he was confined to a mental hospital (Ex. A at 286).

The unanimous opinion of the three doctors who served on the Lunacy Commission at Searcy Hospital was that petitioner was insane and incompetent at the time of his admission to Searcy Hospital (June 27, 1979), at the time of the report (August 16, 1979) and probably at the time of the commission of the offense (Ex. A at 673).

Dr. Rudder, a member of the Lunacy Commission and a psychiatrist employed at Searcy Hospital, a state hospital, testified that petitioner suffers from paranoid schizophrenia and that in his opinion Magwood did not know right from wrong on the date of the offense (Ex. A at 199). He further stated that "Billy Joe Magwood falls into the category that would be called crazy in Stockholm; he would be called crazy in Calcutta, in Tokyo, any place. He is a schizophrenic. He is not in the borderline category." (See Ex. A at 235)

On April 7, 1980, the authorities at Searcy Hospital indicated to the trial judge that based upon a re-evaluation of petitioner by the Lunacy Commission, petitioner was competent to stand trial. The trial judge was advised, however, that while petitioner was now competent to stand trial, his paranoid schizophrenia was in remission due only to the powerful medication he was receiving. The hospital authorities directed that petitioner should remain on medication and in the opinion of the State psychiatrists Magwood had a "potential for becoming depressed and suicidal in jail." (Ex. A at 675). Dr. Rudder further testified that to get Magwood's schizophrenia into its state of remission the doctors started him on a relatively milder form of medication (Loxitane) but found that that did not work. A week later Magwood's medication was changed to "a very potent antipsychotic" (Navane concentrate liquid). He was given eight milligrams a day which, as Dr. Rudder testified, "would put anyone of us in here totally asleep, probably." The doctor testified that while he would be very suspi-

cious of anybody who could stay awake and take it, "it took several months as a matter of fact, for him [Magwood] to do what we call 'come down' on that; in other words, getting back to anything like normal...." Pursuant to the hospital's policy to transfer such patients from the liquid form to a dry form since the doctors have found that the jails simply don't provide the liquid form upon release of the patient to their custody, Magwood's medication was changed to Taractan, virtually the same medication as the dry form of Navane. At the time of Dr. Rudder's deposition, Magwood was taking two hundred milligrams of Taractan three times a day "which is about the maximum dosage." (Ex. A at 243–245).

This evidence overwhelmingly indicates that defendant suffers from and has for a long time suffered from severe mental defects.

This evidence is noted not to suggest that from it a jury could only reach the conclusion that petitioner was legally insane; but rather to indicate that the evidence at a minimum overwhelmingly indicates the existence of the aforementioned mitigating circumstances. The evidence with respect to petitioner's insanity as that legal concept is defined under Alabama law may have been sufficiently in conflict to make it a jury question (compare *Christian v. State*, 351 So.2d 623 (Ala.1977) and *Turner v. State*, 455 So.2d 910 (Ala.1984), and this Court recognizes that an able and experienced trial judge and able and experienced state appellate judges have found it so. Accordingly, while in this Court's opinion the evidence seems particularly strong that petitioner was insane at the time of the offense, this issue is properly left to the state courts. The matter of the existence of mitigating circumstances, however, is an altogether different matter. The record will simply not fairly support a factual determination which rejects the existence of the mitigating circumstances that this crime was committed while defendant was under the influence of extreme mental or emotional disturbance (§ 13–11–7(2)) and that the capacity of the defendant to appre-

ciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired (§ 13–11–7(6)). Even by examining this entire record with the high degree of deference due the state trial court and having indulged a presumption of correctness, *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) with respect to these findings, it is the firm conviction of this Court that these two additional mitigating circumstances exist and that their rejection was error by the trial court. *Alderman v. Austin*, 695 F.2d 124, 132–133 (5th Cir. Unit B 1983), citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Despite the important consideration of comity appropriately accorded the state trial court, this Court would not be discharging its duty to let such clearly erroneous fact-finding stand. *Alderman v. Austin, supra.*

It is wholly incredible in light of the unanimous State Lunacy Commission's findings after a lengthy evaluative process engaged in by trained professionals who were appointed by the State, to find that said murder was not committed while Magwood was under the influence of extreme mental or emotional disturbance. Similarly, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law simply had to be impaired when all members of the Lunacy Commission found him to be suffering from a severe mental disease. This Court notes the obvious—that less evidence of a diseased mind is required to find the existence of these mitigating circumstances than is required to prove the defense of legal insanity under Alabama law. Obviously, if a defendant is adjudged legally insane, no court would be called upon to consider any mitigating circumstances. The case would end. But if the testimony in this case is insufficient to establish the presence of these mitigating circumstances, it is difficult to conceive of a case where such a conclusion would be appropriate.

For these reasons, this Court finds that this case must be remanded to the state trial court for resentencing based upon the existence of these four mitigating circumstances (§ 13–11–7(1), (2), (6), and (7) rather than just the two originally considered.

■ Under our system of "federalism," it is for state courts to determine whether the death sentence is appropriate for defendants in state trials after a careful weighing of aggravating and mitigating circumstances. However, where state courts have found the nonexistence of the two mitigating circumstances which touch on the mental capacity of this defendant, this Court is required to intervene. A psychologist appointed by the State and three psychiatrists appointed by the State all found plaintiff to be suffering from a severe mental disease, schizophrenia. The psychologist who examined plaintiff even after months of powerful medication for the purpose of rendering him sane enough to stand trial acknowledged that petitioner suffered from the mental disease of schizophrenia. The three State psychiatrists appointed by the trial court who examined and treated plaintiff over a period of months were unanimously of the opinion that defendant was legally insane when they examined him and probably legally insane when he committed the crime. In the opinion of this Court the evidence is overwhelming that defendant was *at least* suffering from a severe mental or emotional disturbance and *an impaired capacity* to understand the criminality of his act or to conform his conduct to the requirements of the law. The evidence of Magwood's mental disease appears substantially stronger than such evidence in the recent case of *Berard v. State*, 3 Div. 585 (Ala. Cr.App. July 31, 1984) in which case the Court of Appeals stated:

Although the defendant did not meet the burden of proof to the extent of satisfying the jury by a preponderance of the evidence as to his plea of insanity, *it can hardly be maintained that there was not sufficient evidence presented to the trial judge to show that his mentality was so impaired that he was acting under the influence of extreme mental or emotional disturbance at the time of the crime.* (emphasis added)

■ The Alabama Court of Criminal Appeals made it clear in *Berard* that the appropriate sentence is "life imprisonment without parole" rather than a sentence of death.[2]

If courts can find on the evidence in this case that Magwood was not so mentally impaired, then the requirements of *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); and *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), which upheld the imposition of the death sentence where there were standards and the sentence of death was not arbitrarily or capriciously imposed become only parts of a litany without practical meaning. To find that mitigating circumstances do not exist where such mitigating circumstances clearly exist returns us to the state of affairs which were found by the Supreme Court in *Furman v. Georgia* to be prohibited by the Constitution.

It may be that the state courts will find that despite all the mitigating circumstances in this case, the death sentence rather than life without parole is appropriate. But at least this determination should be made with an acknowledgment that four circumstances which the Alabama Legislature has expressly designated for consideration on the appropriateness of the death penalty for this petitioner do exist.

2. In *Berard,* the Court of Appeals stated that the Alabama statute "does not place any burden upon the defendant as to this point." (showing mitigating circumstances). But in his charge to the jury on the sentencing phase of this case, the judge charged: "A mitigating circumstance need only be proven to your reasonable satisfaction and not beyond a reasonable doubt." (Ex A, at 354) Thus, placing the burden on Magwood of proving mitigating circumstances clearly conflicts with the teaching of *Berard.* This issue raises a question of state law which is appropriately resolved by state courts rather than a federal court.

## VIII.

In response to this Court's order of December 11, 1984 in which the Court directed petitioner to file a brief identifying and addressing those issues which remain in light of the results of the mental evaluation of petitioner filed November 26, 1984, petitioner filed a supplemental brief raising two additional issues.

In the first of his two additional claims, petitioner contests the accuracy of the evaluation performed pursuant to petitioner's claim of present insanity. The Court finds no merit in this claim. Petitioner contends that there is now pending before the United States Supreme Court in *Ake v. Oklahoma, supra,* an issue directly related to petitioner. While the question before the Court in *Ake* to which petitioner alludes was not squarely presented in the instant case, the *Ake* Court declined to address the "sedation" issue that had been raised. See *Ake, supra,* —— U.S. at p. —— n. 2, 105 S.Ct. at p. 1092 n. 2.

## IX.

■ Petitioner's final claim is that the State's remark to the jury in the sentencing phase of the trial that "... the only appropriate punishment for the brutal killing of Sheriff Neil Grantham is death by electrocution" was "unconstitutional." The record indicates that no objection was made to this statement at trial (see Ex. A at 348), nor has it been raised on appeal or on state collateral review. Without suggesting that such a statement constitutes reversible error, there has been no showing offered of cause for the failure to properly preserve the issue. This Court finds this issue to be barred from review by this Court under *Wainwright v. Sykes, supra.*

Accordingly, it is ORDERED that said petition for writ of habeas corpus is granted to the extent that this cause is remanded to the Circuit Court of Coffee County, Alabama, Elba Division, for resentencing consistent with this opinion within sixty days of this date. Said petition is denied in all other respects.