**In re: Billy Joe MAGWOOD, Petitioner.**

**No. 97–1141.**

United States Court of Appeals, Eleventh Circuit.

May 23, 1997.

**1546**

James A. Power, Jr., Marguerite Del Valle, New York City, for Appellant/Petitioner.

Sandra J. Stewart, Alabama Assistant Attorney General, Montgomery, AL, for Appellee/Respondent.

Before TJOFLAT, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Petitioner Billy Joe Magwood, an Alabama inmate convicted of capital murder and sentenced to death, seeks permission to file a successive habeas corpus petition in the United States District Court for the Middle District of Alabama. We deny the application because Petitioner's claims are barred under 28 U.S.C. § 2244(b)(2).

## BACKGROUND

In 1981, Petitioner was convicted of murdering the sheriff of Coffee County, Alabama on March 1, 1979. Upon the jury's recommendation and after a sentencing hearing, the Coffee County Circuit Court sentenced him to death by electrocution. On direct appeal, the state courts upheld both the conviction and sentence, and the facts, evidence, and procedural history of the case are set out in greater detail in those opinions. *Magwood v. State*, 426 So.2d 918 (Ala.Crim.App. 1982) (including the opinion of the Coffee County Circuit Court as Appendix A), *aff'd,* 426 So.2d 929 (Ala.), *cert. denied,* 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983). The state courts denied the petition for a writ of error coram nobis. *Magwood v. State*, 449 So.2d 1267 (Ala.Crim.App.), *appeal denied,* 453 So.2d 1349 (Ala.1984) (denying motion for out of time appeal).

On July 20, 1983, Petitioner filed an original habeas corpus petition in the United States District Court for the Middle District of Alabama. *Magwood v. Smith*, 608 F.Supp. 218 (M.D.Ala.1985), *aff'd,* 791 F.2d 1438 (11th Cir.1986). The district court denied the petition as to eight of Magwood's nine claims, but granted the petition on his claim that the trial court erred in failing to consider two mitigating factors related to his mental state at the time of the offense.[1] *Magwood,* 608 F.Supp. at 220–29. We affirmed the district court as to both the grant of the petition on the sentencing ground and the denial of the petition on all other grounds. *Magwood v. Smith*, 791 F.2d 1438, 1450 (11th Cir.1986).

Following our decision, the Coffee County Circuit Court held a second sentencing hearing, reweighing the aggravating and mitigating factors. The court once again sentenced Petitioner to death, and that decision was affirmed by the state courts. *Magwood v. State,* 548 So.2d 512, 514–15 (Ala.Crim.App.) (finding no error in the resentencing proceeding that adversely affected Petitioner's rights), *aff'd,* 548 So.2d 516 (Ala.1988), *cert. denied,* 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989). On collateral review, the Alabama state courts upheld the resentencing decision. *Magwood v. State,* 689 So.2d 959 (Ala.Crim.App.1996) (including the resentencing opinion of the Coffee County Circuit Court as Appendix A), *cert. denied,* No. 1952019 (Ala. Feb. 28, 1997).

## DISCUSSION

On April 23, 1997, Petitioner filed the instant Application for Leave to File a Petition for Writ of Habeas Corpus. In his application, Petitioner requests permission to file a successive habeas corpus petition as to his 1981 judgment of conviction.[2] Petitioner's application is therefore subject to the amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(b). *See In re Medina,* 109 F.3d 1556,

---

**1.** In his original habeas petition, he asserted the following errors: (1) the denial of his Sixth Amendment right to counsel when he was examined by two doctors while he was in custody without notice to his appointed counsel; (2) the denial of his right to a fair trial when the trial court refused to appoint an independent expert to support his insanity defense; (3) the denial of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to have the death penalty imposed and implemented without racial discrimination; (4) the failure of the trial court to question the jury venire about racial prejudice despite defendant's failure to request such questioning; (5) ineffective assistance of counsel including his attorneys' (a) failure to object to the testimony of Drs. Crook and Cooper, (b) failure to question the jury venire regarding racial prejudice, (c) failure to acquire a bench warrant or subpoena to compel Dr. Rudder's presence, (d) failure to subpoena the two other doctors on the lunacy commission, (e) failure to conduct substantial investigation into the insanity defense; (6) the unconstitutionality of Alabama Code § 15–16–23 (1975), which allows the trial court unbridled discretion to set aside a death sentence without providing standards for finding that an inmate has become insane at some time after conviction and sentence; (7) the failure of the jury and the trial court to consider properly the mitigating circumstances related to Petitioner's mental capacity at the time of the offense; (8) the inaccuracy of psychological evaluation ordered by the district court, which indicated sanity at the time the court considered the petition; and (9) the impropriety of the prosecutor's comment to the jury during the original sentencing phase. *Magwood,* 608 F.Supp. at 220–29.

**2.** Petitioner does not allege any error regarding his 1986 resentencing.

1561–62 (11th Cir.1997). Pursuant to these amendments, this Court may allow the filing of a second or successive petition containing new claims only if we determine that a prima facie showing has been made that the application satisfies the following requirements:

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.[3]

28 U.S.C. § 2244(b)(2). Petitioner does not argue, nor do we find, that his conviction is affected by any new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. *See* 28 U.S.C. § 2244(b)(2)(A).

1. *New Evidence of Pretrial Statements by Drs. Crook and Cooper*

■ Petitioner contends that the State violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding the pretrial statements of Drs. Crook and Cooper, each of whom testified at the sanity hearing held three months after Petitioner's arrest. He claims that the State omitted from the record all reference to the transcript of this proceeding. The record reveals, however, that Petitioner and one of his trial attorneys were present at the sanity hearing. In fact, his attorneys requested the inquiry into his mental competence. Petitioner and his attorneys therefore had personal knowledge of the proceeding, and that knowledge is imputed to his later attorneys. *Felker v. Thomas,* 52 F.3d 907, 910 (11th Cir.), *opinion supplemented on denial of reh'g,* 62 F.3d 342 (11th Cir.1995), *cert. de-*

*nied,* —— U.S. ——, 116 S.Ct. 956, 133 L.Ed.2d 879 (1996). As a result, Petitioner cannot demonstrate that the pretrial statements were previously unavailable through the exercise of due diligence, as required by § 2244(b)(2)(B)(i).

In addition, Petitioner's present attorneys acquired a transcript of this proceeding pursuant to a court order during the state coram nobis proceedings following his first federal habeas case. It is undisputed that the record contains: (1) an order indicating that a sanity hearing was to be held on June 19, 1979; (2) a notation that Dr. Crook and Dr. Cooper would be called as witnesses at that hearing; and (3) an indication that the hearing took place as scheduled. Petitioner has therefore failed to show that the factual predicate for this claim could not have been discovered previously though the exercise of due diligence as required by § 2244(b)(2)(B)(i), and we deny the application as to this claim. *See Felker v. Turpin,* 101 F.3d 657, 662 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 451, 136 L.Ed.2d 346 (1996) (holding that where the petitioner fails to satisfy the first prong of § 2244(b)(2)(B), we need not consider the second prong of that provision but may do so for the sake of completeness).

■ Even if Petitioner were able to show that he could not have discovered these statements through the exercise of due diligence prior to the filing of his original petition, his claim would still fail because the facts alleged do not state a constitutional error as required by § 2244(b)(2)(B)(ii). Petitioner has alleged a violation of *Brady v. Maryland,* under which a successful claimant must show that: (1) the prosecution suppressed evidence; (2) the evidence suppressed was favorable to the defense or exculpatory; and (3) the evidence suppressed was material. *Felker,* 52 F.3d at 910; *see also Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97. Petitioner does not make out a *Brady* claim because he cannot show that the State suppressed pretrial statements made in his presence and that of his attorneys. *See*

---

**3.** Petitioner does not allege that he did not shoot the sheriff. Instead, he argues throughout his application that but for the alleged constitutional errors, no reasonable factfinder would have found him guilty of the offense based upon his insanity.

*Felker,* 52 F.3d at 910. He therefore fails to show a constitutional error as required under § 2244(b)(2)(B)(ii).

■ Petitioner argues that at the pretrial sanity hearing, Drs. Crook and Cooper disclaimed their competence to determine his sanity on the day of the offense, rendering their trial testimony inadmissable under Alabama law. The record reveals, however, that the doctors' pretrial testimony was substantially identical to their trial testimony. Consequently, even if Petitioner could show a *Brady* violation, he cannot establish by clear and convincing evidence that, absent such a constitutional error, the trial testimony would have been inadmissable. Petitioner has not shown that the admission of the allegedly suppressed pretrial statements would have prevented a reasonable factfinder from convicting him of the underlying offense. *See* 28 U.S.C. § 2244(b)(2)(B)(ii).

2. *New Evidence of Prison and Parole Records Indicating that the State Believed Petitioner was Insane Prior to the Offense*

■ Petitioner alleges that the State withheld documents maintained by the Alabama Board of Pardons and Paroles reflecting the opinions of State officials that Petitioner was insane.[4] The documents allegedly surfaced in 1992 after Petitioner's current attorneys served a 1991 discovery order on the Alabama Board of Pardons and Paroles. Petitioner offers no explanation, however, for why these same procedures could not have been employed to secure the documents prior to the filing of his first federal habeas petition. Consequently, Petitioner has not shown that the factual predicate for this claim was previously unavailable through the exercise of due diligence as required under § 2244(b)(2)(B)(i), and we deny the application as to this claim. *See Felker,* 101 F.3d at 662.

Even if Petitioner were able to show that prior attorneys could not have found these documents through the exercise of due diligence, he cannot show that the failure to find these documents stemmed from some constitutional error. *See* 28 U.S.C. § 2244(b)(2)(B)(ii). The State did not suppress the documents, which could have been requested by either party at any time. Specifically, regarding the probation revocation hearing, the State could not have suppressed the fact that the hearing occurred or the transcript from that hearing because Petitioner was present at the hearing and his attorneys certainly knew that his probation had been revoked. *See Felker,* 52 F.3d at 910. Furthermore, even if he could show that these documents were unconstitutionally suppressed, he has not established by clear and convincing evidence that admission of the documents would have prevented a reasonable factfinder from convicting him of the underlying offense. *See* 28 U.S.C. § 2244(b)(2)(B)(ii).

3. *New Evidence of Documents Found by Petitioner's Family and Current Attorneys*

■ Petitioner states that his family and his current attorneys recently uncovered letters and Veterans Administration documents in which he exhibited paranoid schizophrenic delusions involving state officers for years prior to the offense. He explains that in 1992, his family and attorneys entered a family home where they found these records. This is the same home where Petitioner was known to have lived upon his release from jail after serving his drug sentence and where authorities arrested him for the shooting. After his arrest, his sister appears to have maintained complete and continuous control of the home. Petitioner offers no reason why previous attorneys could not have discovered these documents prior to his original habeas filing by exercising the same due diligence his current attorneys employed. He has therefore failed to show that the factual predicate for this claim could not have been discovered previously though the

---

4. The allegedly suppressed documents include: internal reports by the staff of the Alabama Board of Pardons and Paroles recommending that Petitioner not be paroled because he needed institutional treatment for his mental illness, an internal memo from his probation officer noting his mental instability, letters from Petitioner in which he mentioned voices in his head, and a transcript of his July 27, 1976, probation revocation hearing.

exercise of due diligence as required by § 2244(b)(2)(B)(i), and we deny the application as to this claim. *See Felker,* 101 F.3d at 662.

Even if he were able to show that the documents were not previously discoverable through the exercise due diligence, Petitioner cannot show a violation of *Brady.* The State cannot have suppressed documents it never possessed. Failure to search a defendant's own house for evidence does not amount to a constitutional error as required by § 2244(b)(2)(B)(ii).

Moreover, even if he could show that these documents were unconstitutionally suppressed, he has not established by clear and convincing evidence that admission of the documents would have prevented a reasonable factfinder from convicting him of the underlying offense. *See* 28 U.S.C. § 2244(b)(2)(B)(ii).

### 4. *Ineffective Assistance of Appellate Counsel*

■ Petitioner seeks to include within his successive habeas petition a claim for ineffective assistance of appellate counsel. In his application he does not delineate the basis for this claim with precision, but he focuses on appellate counsel's failure to challenge admission of testimony from Dr. McKeown, Dr. Crook, and Dr. Cooper. Petitioner asserts that Dr. McKeown's testimony should have been ruled inadmissible under Alabama law because it allegedly relied upon information not submitted into evidence. He also maintains that testimony offered by Drs. Crook and Cooper should have been excluded under Rule 11.2(b)(1) of the Alabama Rules of Criminal Procedure, which provides that the results of competency evaluations shall not be admissible as evidence at trial.[5]

It is not disputed that the factual predicates for this claim could have been discovered previously through the exercise of due diligence. The factual predicate for the

claim that appellate counsel should have appealed the admission of Dr. McKeown's testimony was Dr. McKeown's acknowledgment during trial that he based his testimony partly on information provided by the prosecution. Similarly, the factual predicate for the claim that counsel should have appealed admission of the testimony offered by Drs. Crook and Cooper was available prior to filing of the first federal habeas petition. Petitioner has not shown that the factual predicate for this claim was previously unavailable through the exercise of due diligence as required under § 2244(b)(2)(B)(i), and we deny the application as to this claim. *See Felker,* 101 F.3d at 662.

Petitioner nonetheless contends that "[t]he primary issue . . . is not whether the requirements of subsections 2244(b)(2)(B)(i) and (ii) have been met but, rather, whether they should apply at all." State's Response at 14. According to Petitioner, his ineffective assistance of appellate counsel claim should not be considered successive because his appellate counsel also represented him during the first federal habeas proceeding. Petitioner submits that his first federal habeas counsel cannot reasonably be expected to advance a claim based upon his own deficient performance during direct appeal. In support of this contention, Petitioner cites to several pre-AEDPA cases wherein courts have excused habeas counsel's failure to argue that he provided ineffective assistance at trial or on direct appeal.

Petitioner's argument fails to appreciate the changes wrought by enactment of AEDPA. Contrary to the assumption evident in Petitioner's position, the "cause and prejudice" standard no longer governs analysis of successive petitions. By enacting AEDPA, Congress directed courts of appeals to authorize the filing of successive petitions only when an applicant makes a prima facie showing that the claim advanced qualifies for one of the narrow exceptions specified in § 2244(b)(2). We are not at liberty to disre-

---

5. As noted earlier, Petitioner does not and could not contend that his ineffective assistance of counsel claim relies upon a new rule of constitutional law. *See, e.g., Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980) ("Our decisions make clear that inade-

quate assistance does not satisfy the Sixth Amendment right to counsel made applicable to the States through the Fourteenth Amendment."). Consequently, the claim does not fit within the § 2244(b)(2)(A) exception to the bar against successive federal habeas applications.

gard the clear mandate of this subsection. As Petitioner has not shown that his ineffective assistance claim qualifies under either § 2244(b)(2) exception, the claim may not be raised in a successive petition.

■ Moreover, the ineffective assistance of counsel claim advanced by Petitioner would fail even if analyzed under the "cause and prejudice" standard that prevailed prior to enactment of AEDPA. Under pre-AEDPA law concerning second or successive petitions, Petitioner would not be able to litigate the merits of his ineffective assistance of appellate counsel claim unless he established cause and prejudice sufficient to excuse his failure to raise that claim in his first federal habeas petition. *See Felker v. Turpin,* 83 F.3d 1303, 1307 (11th Cir.), *cert. granted,* ⸺ U.S. ⸺, 116 S.Ct. 1588, 134 L.Ed.2d 685, *cert. dismissed,* ⸺ U.S. ⸺, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). In an argument reminiscent of one rejected by this Court in *Hill v. Jones,* 81 F.3d 1015, 1024 (11th Cir.1996), *cert. denied,* ⸺ U.S. ⸺, 117 S.Ct. 967, 136 L.Ed.2d 851 (1997), Petitioner suggests that he has demonstrated "cause" for his failure to raise that claim in his first habeas corpus petition inasmuch as the same individual represented him during his direct appeal and his first federal habeas proceeding. Petitioner evidently believes that his habeas counsel provided ineffective assistance in that he declined to submit any habeas claims premised upon claimed deficiencies in his own appellate representation.

We cannot agree that habeas counsel's presumed reluctance to argue his own ineffectiveness on appeal constitutes cause for failing to advance such claims in the original federal habeas petition. For counsel's ineffectiveness to establish cause sufficient to excuse a procedural default, the ineffectiveness must be attributable to the state. *Coleman v. Thompson,* 501 U.S. 722, 754, 111 S.Ct. 2546, 2567, 115 L.Ed.2d 640 (1991); *Hill,* 81 F.3d at 1024. Ineffective assistance of counsel may be imputed to the state only when the Sixth Amendment requires that the state furnish the defendant with effective counsel. *Coleman,* 501 U.S. at 754, 111 S.Ct. at 2567. Although defendants have a Sixth Amendment right to counsel at trial and on direct appeal, they possess no corresponding right to counsel while collaterally attacking their convictions. *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987); *Hill,* 81 F.3d at 1024. It follows, and this Court has repeatedly held, that ineffectiveness of collateral counsel cannot serve as "cause" excusing the failure to raise a claim in a previous habeas petition because any inadequacies in habeas representation may not be imputed to the state.[6] *See, e.g., Hill,* 81 F.3d at 1025 ("[T]his Court has rejected the proposition that collateral counsel's ineffectiveness can serve as cause excusing a procedural default."); *Weeks v. Jones,* 26 F.3d 1030, 1046 (11th Cir.1994) (holding that "ineffective assistance of counsel in a state collateral proceeding is not cause to override a procedural bar that precludes review of a claim in federal court"), *cert. denied,* 513 U.S. 1193, 115 S.Ct. 1258, 131 L.Ed.2d 137 (1995). Consequently, even under the pre-existing legal standards, procedural bars would have foreclosed review of Petitioner's claim for ineffective assistance of appellate counsel.

5. *New Evidence that Jurors Were Acquainted with Victim and Witnesses*

■ Petitioner claims that he has recently discovered evidence that jurors were personally acquainted with the victim and State witnesses at trial but that they failed to disclose their acquaintance at voir dire. We are not told how Petitioner's attorneys discovered this information. He simply argues that he could not have discovered the information sooner because he was not provided with a list of witnesses before trial. Petitioner's argument, however, inappropriately focuses on whether this information could have been discovered prior to trial. Instead, we must consider whether the information was available prior to the filing of the first habeas. Petitioner does not assert that the jurors were approached or that they refused to

---

**6.** Petitioner cites *Stephens v. Kemp,* 846 F.2d 642 (11th Cir.), *cert. denied,* 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988), as contrary authority, but that decision preceded the Supreme Court's pronouncement in *Coleman.*

speak to his attorneys any time prior to the filing of the first federal habeas petition. He makes only the unsubstantiated assertion that jurors would not discuss their relationships until recently. Petitioner has therefore failed to show that the factual predicate for this claim could not have been discovered previously though the exercise of due diligence as required by § 2244(b)(2)(B)(i), and we deny the application as to this claim. *See Felker*, 101 F.3d at 662.

■ Moreover, this evidence, if proven, would not establish by clear and convincing evidence that but for the alleged constitutional error, no reasonable factfinder could have found Petitioner not guilty of the underlying offense. *See* 28 U.S.C. § 2244(b)(2)(B)(ii). Petitioner makes this allegation based on one juror's relationship to the victim and State witnesses. He has not shown that but for this one juror's alleged bias, no reasonable factfinder would have found him not guilty of the underlying offense. *See* 28 U.S.C. § 2244(b)(2)(B)(ii).

6. *New Evidence that Trial Counsel had Conflicts of Interest*

■ Petitioner claims that newly discovered information reveals that his trial attorney had a conflict of interest because he feared his name was on a hit list prepared by Petitioner. In addition, his other trial attorney had been a friend of the victim since childhood. We are not told how Petitioner's current attorneys discovered this information or why prior attorneys could not have done so. Petitioner has therefore failed to show that the factual predicate for this claim could not have been discovered previously though the exercise of due diligence as required by § 2244(b)(2)(B)(i), and we deny the application as to this claim. *See Felker*, 101 F.3d at 662.

Even assuming that the attorneys had conflicts, Petitioner does not allege any constitutional error. *See* 28 U.S.C. § 2244(b)(2)(B)(ii). Furthermore, even if we assume a constitutional error, Petitioner cannot show by clear and convincing evidence that his attorneys' conflicts would require a reasonable factfinder to render a verdict of not guilty of the underlying offense. *See* 28 U.S.C. § 2244(b)(2)(B)(ii).

7. *Retroactive Application of the § 2244 Procedural Bar*

■ In his final argument, Petitioner asserts that restrictions contained in amended § 2244(b) may not be applied "retroactively" to the facts of the present case. Specifically, Petitioner argues that § 2244(b) should not apply because the claims asserted in the present habeas petition accrued prior to enactment of AEDPA. This Court squarely rejected a virtually identical argument in *In re Medina*, 109 F.3d at 1561–62. The petitioner in *Medina* had argued that the requirements of § 2244(b) should not apply to his case because he filed his original petition prior to the April 24, 1996, effective date of AEDPA. In dismissing Medina's position, we held that the right to file a second or successive application and have it judged according to pre-AEDPA law is determined by the date of filing of the application for permission to file a successive petition. *Id.* at 1563. The *Medina* decision therefore dictates that we analyze Petitioner's claims under the amended habeas statute because he filed the instant application for permission to file a successive habeas petition on April 23, 1997—well after the effective date of AEDPA.

■ Nor can we accept Petitioner's related argument that the § 2244(b) restrictions should not be applied to his case because he detrimentally relied upon the continued availability of the prior legal standards. Citing the Seventh Circuit's decision in *Burris v. Parke*, 95 F.3d 465 (7th Cir.1996) (en banc), Petitioner contends that, at least where he has detrimentally relied upon provisions in pre-AEDPA law, the AEDPA amendments may not be applied to claims that accrued prior to the 1996 effective date. The present case, however, is distinguishable from *Burris* because Petitioner has not relied to his detriment upon pre-AEDPA law. We know that Petitioner did not deliberately refrain from including those claims predicated upon "newly discovered evidence" in his first federal habeas petition based on any expectation regarding pre-AEDPA law because he has represented that the bases for these claims were

not known to him at that time. *See Medina,* 109 F.3d at 1562 (rejecting a detrimental reliance argument because even "if Medina had known of the changes that AEDPA would make, he still would have filed his first application when he did, and he would not have included in it any of the claims he is attempting to raise now in a second application"). As to the claim for ineffective assistance of appellate counsel, any reliance on the continued availability of pre-AEDPA law was not detrimental because, as previously discussed, the claim also would have been procedurally barred under prior law. Consequently, the *Burris* decision has no application to the present case.

## CONCLUSION

For the aforementioned reasons, Petitioner's application for permission to file a second habeas corpus petition in the district court is denied.

DENIED.