United States Court of Appeals,

Eleventh Circuit.

No. 94-8224.

Ellis Wayne FELKER, Petitioner-Appellant,

v.

Albert G. THOMAS, Warden, Respondent-Appellee.

Aug. 9, 1995.

Appeal from the United States District Court for the Middle District of Georgia. (No. 93-171-3-MAC(WDO), Wilbur D. Owens, Jr., Judge.

ON PETITION FOR REHEARING
AND SUGGESTION OF
REHEARING EN BANC

Before BIRCH, BLACK and CARNES, Circuit Judges.

PER CURIAM:

Because no member of this panel nor any other judge in regular active service on this Court has requested that this Court be polled about the suggestion of rehearing en banc (Fed.R.App.P. 35; 11th Cir.R. 35-5), that suggestion is denied, as is the petition for rehearing. However, the initial panel opinion, published at 52 F.3d 907 (11th Cir.1995), is extended as follows:

In his petition for rehearing, Felker argues that we have failed to give proper deference to the state court factfindings relating to the *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), issue. We affirmed the denial of relief as to the *Brady* claim on two independently adequate grounds. One was that Felker had not established, and cannot establish, that the evidence in question was suppressed, because if that evidence is true, Felker himself was aware of it before trial. None of the

state court factfindings is in any way inconsistent with that independently adequate basis for denying relief on the claim.

Felker's arguments about the state court factfindings go only to our alternative holding that the allegedly suppressed evidence was immaterial, anyway. *Felker,* 52 F.3d at 910-11. We stated in our opinion that Felker's alibi for Wednesday, November 25, 1981, began when the police arrived at his house, which was at 7:00 p.m. *Id.* at 909-10. As Felker points out, one part of the Georgia Supreme Court's opinion, which did not address the *Brady* issue, states that the police arrived at Felker's house that evening at "approximately 5:30 p.m." *Felker v. State,* 252 Ga. 351, 314 S.E.2d 621, 627 (1984). We were bound to accept that factfinding as correct unless we concluded that it is not "fairly supported by the record." *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981). That is exactly what we concluded, albeit implicitly.

Our examination of the record revealed that there were only three witnesses who testified concerning the time the police officers arrived at Felker's house on Wednesday, November 25, 1981. Two were detectives. Detective Pond testified that he was initially informed about the case at the police station at about 5:30 or 6:00 p.m. that night. He also testified that he did not have a record of the time that he and detective Upshaw had arrived at Felker's house, but he thought that it was about 5:30 or 6:00 p.m. that evening. However, when Felker's attorney asked Detective Pond during cross-examination if it could have been nearer to 7:00 p.m. that evening when they arrived at Felker's house, Detective

Pond testified: "I guess it's a possibility because I can't recall the exact time." By contrast, Detective Upshaw had no problem recalling the exact time that he and Detective Pond went to Felker's house. During cross-examination by Felker's attorney he testified as follows:

BY MR. HASTY:

Q: Sergeant Upshaw, I believe the night that you did this investigation, November the 25th, that was right at seven p.m. you went to Mr. Felker's house?

A: Yes, sir.

Q: And you're positive of the time?

A: Yes, sir. 7:02 to be exact.

Q: 7:02?

A: Yes, sir, because we called it out on the radio, police radio; went back and checked the log.

The only other witness to testify about the arrival of the detectives was Felker himself. He stated that he did not know when the detectives arrived that evening, except that it was after dark.

Having carefully considered all of the evidence on the issue, we find that the Georgia Supreme Court's statement that the two officers arrived at Felker's house at approximately 5:30 p.m. on Wednesday, November 25, 1981, is not "fairly supported by the record." Instead, it is contradicted by the record, which establishes that the two officers arrived at Felker's house at 7:02 p.m. that evening.

Even if we accepted the state court's finding that the detectives arrived at Felker's house between 5:30 p.m. and 6:00 p.m. that evening, the result still would be the same. Nothing about the timing of the detectives' arrival changes the fact that

Felker himself personally knew about the allegedly suppressed evidence, if it was true, 52 F.3d at 910, nor does the time of their arrival change the fact that the allegedly suppressed evidence flatly contradicted Felker's own sworn testimony about when he was last with the victim, *id.* at 910-11.[*]

---

[*]Felker also argues that we should have credited the Georgia Supreme Court's finding concerning the testimony of Dr. Whitaker, the medical examiner, about when the bruises were inflicted on the victim. The Georgia Supreme Court said "Dr. Whitaker concluded that the bruises had been inflicted 4 to 6 hours prior to death." 314 S.E.2d at 627. Actually, the record reveals that Dr. Whitaker testified that three of the four bruises on the victim's body were "fresh," which he said meant that they were inflicted between zero and four to six hours before death. He testified that the fourth bruise, which was not fresh, was probably inflicted four to six hours before death but that "there is a possibility it could have been 10 years also." Neither Dr. Whitaker nor any other witness testified that that bruise was inflicted by the killer.

Moreover, Dr. Whitaker's testimony was evidence that was presented, not suppressed. The only evidence allegedly suppressed was evidence tending to show that the victim had been at a western wear store (with Felker) the Wednesday afternoon of her death. Dr. Whitaker's testimony concerning the victim's bruises does not change the fact that Felker personally knew about the allegedly suppressed evidence, nor does it change the fact that that evidence would have directly contradicted Felker's own sworn testimony. Accordingly, we need not decide whether the state court's characterization of Dr. Whitaker's testimony is fairly supported by the record.