United States Court of Appeals,

Eleventh Circuit.

No. 94-8224.

Ellis Wayne FELKER, Petitioner-Appellant,

v.

Albert G. THOMAS, Warden, Respondent-Appellee.

May 8, 1995.

Appeal from the United States District Court for the Middle District of Georgia. (No. 93-171-3-MAC (WDO)) Wilbur D. Owens, Jr., Judge.

BIRCH, BLACK and CARNES, Circuit Judges.

CARNES, Circuit Judge:

This appeal involves the denial of habeas corpus relief, 28 U.S.C. § 2254, to Ellis Wayne Felker, in connection with his 1983 murder conviction and death sentence imposed by the State of Georgia. Felker raises three issues. He contends that there was insufficient evidence to convict him; that the prosecution suppressed evidence favorable to him in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and, that his retained trial counsel rendered ineffective assistance of counsel at the sentence stage by conceding that Felker was guilty of the crime for which the jury had convicted him. We find no merit in any of Felker's contentions.

## I. FACTS

In 1976, Felker used deception to lure Jane W., a waitress, to his residence, where he overpowered her. Felker then subjected her to bondage, beating, sadistic sexual abuse, and sodomy. When Jane W. pleaded with Felker to release her, he told her he could not let

her go because she would tell the police what he had done to her. Fortunately for her, she managed to escape after Felker fell asleep. Because of what he had done to Jane W., Felker was convicted of aggravated sodomy and sentenced to twelve years imprisonment with four years of the twelve-year sentence to be probated.

Unfortunately, Felker was paroled in 1980 after serving only four years of his sentence. Less than a year after he was released on parole, Felker used deception to lure Evelyn Joy Ludlam, a nineteen-year-old college student working as a waitress, to his residence. There, he forcibly subjected her to bondage, beating, rape, and sodomy. As the Georgia Supreme Court said in comparing what Felker had done to Jane W. in 1976 to what he did to Joy Ludlam in 1981: "The similarities are numerous and distinctive...." *Felker v. State,* 252 Ga. 351, 314 S.E.2d 621, 632 (detailing the similarities), *cert. denied,* 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). Tragically for Joy Ludlam, there was one major difference: she did not escape. Felker murdered her and threw her body in a creek.

## II. PROCEDURAL HISTORY

For the crimes he committed against Joy Ludlam, Felker was convicted of murder, rape, aggravated sodomy, and false imprisonment. At the sentence stage, the jury found two statutory aggravating circumstances: the murder was committed while Felker was engaged in a rape; and, the offense was outrageously or wantonly vile, horrible or inhuman because it involved torture or depravity of mind. Felker was sentenced to death.

In his direct appeal, Felker raised forty issues or enumerations of error. The Georgia Supreme Court held there was no merit in any of them, and affirmed his conviction and death sentence. *Felker v. State,* 252 Ga. 351, 314 S.E.2d 621 (1984). The United States Supreme Court denied certiorari. *Felker v. Georgia,* 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).

Felker then challenged his conviction and sentence in a state habeas corpus proceeding in which he raised fourteen issues. The state trial court denied collateral relief, and the Georgia Supreme Court denied Felker's application for a certificate of probable cause to appeal that denial. The United States Supreme Court denied certiorari. *Felker v. Zant,* 502 U.S. 1064, 112 S.Ct. 950, 117 L.Ed.2d 118 (1992).

Felker then filed, in the United States District Court for the Middle District of Georgia, a petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. In his petition, Felker raised five claims, alleging: 1) insufficiency of the evidence to convict; 2) a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); 3) ineffective assistance of counsel at the sentence stage; 4) improper use of hypnosis to refresh the memory of a witness for the state; and 5) violation of double jeopardy and collateral estoppel principles by the use of evidence of Felker's crime against Jane W. in his trial for crimes against Joy Ludlam. The district court denied relief, and this appeal followed. In this Court, Felker presses only the first three issues.

### III. DISCUSSIONS

## A. THE SUFFICIENCY OF THE EVIDENCE CLAIM

Felker contends that he is entitled to habeas corpus relief under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), because the evidence was insufficient to convict him. The voluminous evidence against Felker has been set out in detail by the Georgia Supreme Court, 314 S.E.2d at 626-31, 635-36, and we will not repeat it here. The constitutional test for the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789.

In determining that there was sufficient evidence to convict Felker of false imprisonment and of murder, the Georgia Supreme Court explained:

> The evidence supports a finding that Joy Ludlam was bound at her wrists and ankles, gagged, and blindfolded, all against her will. She was therefore confined and detained without legal authority in violation of her personal liberty. Thus, the evidence was sufficient to support the conviction for false imprisonment.

314 S.E.2d at 638 (footnote omitted). As to the basis for the rape and aggravated sodomy convictions, the court said:

> We conclude that the evidence was sufficient to convince a rational trier of fact beyond a reasonable doubt that appellant accosted the victim for purposes of achieving deviant sexual gratification and that to this end she was bound and gagged, beaten, raped and sodomized. Thus, we find that the convictions for rape and aggravated sodomy are supported by sufficient evidence. *Jackson v. Virginia, supra.*

*Id.* Reviewing the evidence *de novo,* we reach the same conclusions as the Georgia Supreme Court.

## B. THE *BRADY* CLAIM

Felker claims that the State of Georgia violated *Brady v.*

*Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose to the defense evidence indicating that the last time someone other than the murderer saw Joy Ludlam alive was at sometime between approximately 2:30 and 4:00 p.m. on Wednesday, November 25, 1981, instead of at 5:00 p.m. the day before. Either time is consistent with the State's forensic testimony at trial, which established a broad range for the time during which death could have occurred—any time from November 24 to December 5, 1981. The materiality of the undisclosed evidence, Felker argues, is that the prosecution's theory at trial was that Joy Ludlam was killed after 6:30 p.m. on Tuesday, November 24, either later that night or in the early morning hours of November 25. The State concedes that Felker had an alibi for all relevant times beginning at approximately 7:00 p.m. on the evening of Wednesday, November 25, and his alibi was a good one—the police had him under surveillance from 7:00 p.m. that Wednesday until he was arrested on December 8, 1981.

A successful *Brady* claim requires three elements: (1) the prosecution suppressed evidence, (2) the evidence suppressed was favorable to the defense or exculpatory, and (3) the evidence suppressed was material. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196-97; *Jacobs v. Singletary,* 952 F.2d 1282, 1288 (11th Cir.1992); *Delap v. Dugger,* 890 F.2d 285, 298 (11th Cir.1989), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990). Felker's claim fails on the first and third elements. He cannot establish that the evidence in question was suppressed, because the evidence itself, if true, proves that Felker was aware of the existence of

that evidence before trial.  The parties disagree about whether the evidence was effectively disclosed to defense counsel, but that dispute need not detain us.  Viewed most favorably to Felker, the evidence in question is that a sales clerk at a western wear store saw Joy Ludlam in the presence of Felker and another woman at that store sometime around 2:30 p.m. to 4:00 p.m. on Wednesday, November 25, 1981.[1]  However, the witness Felker claims would have testified to that fact also would have testified that Felker himself was present with the victim on that occasion, and that Felker directed the victim to pay for her purchase in cash instead of with a check.[2]  If the witness's statements are true, and Felker's *Brady*

---

[1]A police report indicated that on December 11, 1981, Katherine Gray of Thaxton's Western Center had told two officers that at approximately 3:00 or 4:00 p.m. on Wednesday, November 25, 1981, Joy Ludlam had come into the store and purchased a pair of boots.  Ms. Gray located a receipt reflecting the sale of boots on that date, but the receipt did not contain Joy Ludlam's name or anything else identifying the purchase as hers.  When placed under hypnosis on December 14, 1981, Ms. Gray said that the time Joy Ludlam came into the store was 2:30 p.m. on the Wednesday before Thanksgiving, which would have been November 25. Ms. Gray did not testify at trial.  However, she did testify by deposition in the state post-conviction proceeding that she could *not* remember what date Joy Ludlam had been in the store.

It is undisputed that neither the contents of the December 11 police report nor the statements Ms. Gray made during the December 14 hypnosis session was disclosed to defense counsel.  But it is also undisputed that Ms. Gray's name was provided by the prosecution to defense counsel, who interviewed her twice before trial.  Defense counsel testified in the state post-conviction proceeding that Ms. Gray was not forthcoming when he interviewed her.  She testified she had answered truthfully everything he asked her.

[2]The December 11, 1981, police report indicated that Ms. Gray identified Felker as the man who had accompanied Joy Ludlam to the store.  In her hypnotized statement, Ms. Gray described how Felker had prevented Ludlam from paying with a check.  Her state post-conviction proceeding deposition testimony included identification of Felker as the man who had been with Ludlam and

claim assumes they are, then Felker was there in the store with Joy Ludlam on the afternoon of Wednesday, November 25, 1981.  Because he was there with her, Felker knew all about the victim having gone into that particular store at that time and having been seen alive at that time by the store clerk, and possibly by other persons in the store.  Not only did Felker know all of that, but because he was there when it happened, he knew it well before anyone representing the State did.

We have held numerous times that there is no suppression, and thus no *Brady* violation, if either the defendant or his attorney knows before trial of the allegedly exculpatory information.  *E.g., United States v. Valera,* 845 F.2d 923, 927-28 (11th Cir.1988), *cert. denied,* 490 U.S. 1046, 109 S.Ct. 1953, 104 L.Ed.2d 422 (1989);  *Halliwell v. Strickland,*  747 F.2d 607, 609 (11th Cir.1984), *cert. denied,* 472 U.S. 1011, 105 S.Ct. 2711, 86 L.Ed.2d 726 (1985);  *United States v. Cravero,*  545 F.2d 406, 420 (5th Cir.1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977).  Because the information in question was not suppressed from Felker's own personal knowledge, his *Brady* claim fails for that reason.

Another independently adequate reason why Felker's  *Brady* claim fails is that the evidence in question is not material.  We measure materiality pursuant to the Supreme Court's latest instructions on the subject in *Kyles v. Whitley,* --- U.S. ----, 115 S.Ct. 1555, --- L.Ed.2d ---- (1995).  Although the evidence in question would have been inconsistent with the prosecution's theory

---

had insisted that Ludlam pay with cash instead of with a check.

at trial about when the victim was last seen alive, it would not have been inconsistent with any of the evidence proving Felker's guilt.[3]  More importantly, the evidence in question would have flatly contradicted Felker's testimony on his own behalf.  Felker took the stand at trial and testified that he had last seen Joy Ludlam at about 6:00 p.m. on Tuesday, November 24, 1981, and that he knew nothing whatsoever about her whereabouts after that time.  If the sales clerk at the western wear store had been called as a witness at trial to testify that Joy Ludlam was in the store the next afternoon, her testimony also would have established that Felker had been there with Joy Ludlam, and thus that he had lied under oath about when he was last with the victim.  Her testimony would have established that Felker was with the victim one day later and thus one day closer to the time of the murder.  Her testimony would have established that Felker had been ordering the victim around—that shortly before Joy Ludlam was murdered Felker had told her to pay for a purchase with cash instead of with a

---

[3]We have carefully considered Felker's argument that there would not have been enough time for him to have killed Joy Ludlam between the time she was seen with him at the western wear store on the afternoon of November 25, 1981, and the time police surveillance of Felker began later that evening.  The record indicates he would have had time.  At oral argument, Felker's counsel argued that the evidence in question established that Felker and Ludlam had left the store at approximately 3:00 p.m. on November 25.  Yet the record also establishes that police contact with, and surveillance of, Felker did not begin until three or four hours later.  Contrary to Felker's assertion, the testimony of the State's forensic expert, when considered in its entirety, does not establish that the killer had begun abusing Ludlam hours before she was killed.  Accordingly, even if we assume, as Felker now contends, that Ludlam and he left the western wear store at 3:00 p.m. on November 25, he still would have had time to abuse and kill Ludlam and dispose of her body before the police officers arrived at his house three to four hours later.

check. The jury would have been entitled to infer, and no doubt would have inferred, from that fact that Felker had been making sure that the victim's whereabouts could not be traced later through the check she had wanted to write.

According to *Kyles v. Whitley,* we are to view the evidence in question as a whole, --- U.S. at ----, 115 S.Ct. at ----, and determine "whether in its absence [the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence," *id.* at ----, 115 S.Ct. at ----, or stated somewhat differently, whether the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict," *id.* at ----, 115 S.Ct. at ---- (footnote omitted). Especially given Felker's own testimony at trial, the net effect of the entire evidence in question is not even favorable to him. For that reason, Felker's claim probably fails even the second prong of *Brady,* and it most assuredly fails the third, or materiality prong. The evidence in question could not reasonably be taken to put the whole case in a different light so as to undermine confidence in either the guilt verdict or the sentence. Felker received a fair trial, one resulting in a verdict and sentence worthy of our confidence.

## C. THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Felker's ineffective assistance of counsel claim relates to the sentence stage where, according to him, his counsel conceded Felker's guilt of the crime. Relying on decisions such as *Francis v. Spraggins,* 720 F.2d 1190, 1194 (11th Cir.1983), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985), and *Young v.*

*Zant,* 677 F.2d 792, 799-800 (11th Cir.1982), *cert. denied,* 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986), Felker argues that trial counsel may not concede the guilt of a defendant who has pleaded not guilty, at least not without the defendant's consent. That is true enough as to the guilt stage, which is what those decisions concerned. However, the situation is entirely different at the penalty stage where the same jury that will be determining the defendant's sentence has already unanimously found beyond a reasonable doubt that he is guilty of the crime charged. As we said in *Green v. Zant,* 738 F.2d 1529, 1542 (11th Cir.), *cert. denied,* 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984), "A defendant does not arrive at the penalty phase of a capital proceeding with a clean slate, and there is no point in pretending otherwise." It is entirely reasonable for an attorney to conclude that there is little to be gained and much to be lost by "fighting the hypothetical" and pretending that his freshly convicted client is not guilty in the eyes of the sentencing jury.

We do not mean to imply that pursuit of what is sometimes called a whimsical doubt or residual doubt strategy at the sentence stage will constitute ineffective assistance of counsel. Our decisions recognize that in some circumstances a decision to continue denying the defendant's guilt throughout the sentence stage will be within the range of reasonable professional assistance. *See, e.g., Julius v. Johnson,* 840 F.2d 1533, 1542 (11th Cir.), *cert. denied,* 488 U.S. 960, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988); *Funchess v. Wainwright,* 772 F.2d 683, 689-90 (11th Cir.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1242, 89 L.Ed.2d

349 (1986). However, it is a " *wide* range of reasonable professional assistance" that is constitutionally acceptable. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) (emphasis added). Within that wide range of reasonable professional assistance, there is room for different strategies, no one of which is "correct" to the exclusion of all others. As we have recently observed, "The Supreme Court has recognized that because representation is an art and not a science, "[e]ven the best criminal defense attorneys would not defend a particular client in the same way.' " *Waters v. Thomas,* 46 F.3d 1506, 1522 (11th Cir.1995) (en banc) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065); *see also White v. Singletary,* 972 F.2d 1218, 1220 (11th Cir.1992) (stating that the test is not what the best lawyers would have done or what most good lawyers would have done, but only whether some reasonable attorney could have acted in the circumstances as this attorney did). Whether to pursue a residual doubt strategy or a strategy seeking mercy notwithstanding guilt is a strategic question left to counsel. We will not second-guess counsel's answer.

The record in this case establishes that counsel's decision not to belabor the guilt issue at the sentence stage was entirely reasonable. At the trial level, Felker was represented by three retained attorneys who divided among themselves responsibility for various tasks. The attorney primarily responsible for formulating and carrying out defense strategy at the sentence stage was J. Robert Daniel, an experienced attorney who had represented capital defendants before.

After conducting an evidentiary hearing on this claim in the state habeas proceeding, the trial court found that prior to trial Daniel interviewed numerous witnesses in preparation for the sentence stage. Based upon his past experience, Daniel believed that "after the jury rejects a claim of innocence there is no wisdom in going back to the same jury and asking for a life sentence while still telling the jury they made an erroneous decision." He knew of another trial in which an attorney had attempted to litigate the guilt issue again at the sentence stage and had been unsuccessful. Rather than follow that strategy, which he believed to be unwise, Daniel decided to present mitigating evidence and argue that the jury should spare Felker's life because of his potential in the future, instead of arguing that the jury had made a mistake in finding him guilty of the crime.

In his opening statement at the sentence stage, Daniel told the jury that it would be hearing from:

> family members, relatives, friends of the family, to give you some kind of idea of who Wayne Felker is. You know Wayne Felker only as Wayne the convicted murder[er], rapist and sodomist at this point. You don't know anything about his upbringing, how he got to where he is today.
>
> We want you to meet Wayne Felker through his parents, through his friends, through his relatives, and to give you some kind of idea of their feelings, and they're going to ask you, quite frankly I expect, to impose a life sentence in the case, and they're going to also give you their reasons for that.

Daniel presented as mitigating circumstance witnesses: Felker's mother, his father, two aunts, one of his ex-wives, two family friends, and his former Sunday School teacher. In addition to the testimony of these witnesses who knew Felker, Daniel presented the testimony of several academics and religious scholars opposed to

the death penalty, including two professors in the Christianity department at Mercer, a professor of political science at the University of Georgia, and a minister with the Southern Prison Ministry, who works with death row inmates and their families.

There is nothing unreasonable about the sentence stage strategy that Daniel chose or about the way he carried it out. Felker also argues that the strategy Daniel pursued was against his wishes. The state trial court found as a fact to the contrary. Even if we were to ignore that factfinding, and even if we were to assume for present purposes that Felker had a right to determine the strategy that would be pursued, there is no possibility that a residual doubt strategy would have produced a different result in this case.

## IV. CONCLUSION

The district court's denial of the petition for habeas corpus relief is AFFIRMED.