United States Court of Appeals,

Eleventh Circuit.

No. 96-9346.

Ellis Wayne FELKER, Petitioner,

v.

Tony TURPIN, Warden, Georgia Diagnostic and Classification Center, Respondent.

Nov. 14, 1996.

On Motion for Certificate of Probable Cause, or in the Alternative, Certificate of Appealability. (No. 93-171-3-MAC), Wilbur D. Owens, Jr., Judge.

Before BIRCH, BLACK and CARNES, Circuit Judges.

PER CURIAM.

On May 2, 1996, we denied Ellis Wayne Felker's first application filed pursuant to 28 U.S.C. § 2244(b)(3)(A), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, for an order permitting him to file in the district court a second petition for federal habeas relief under 28 U.S.C. § 2254. *Felker v. Turpin,* 83 F.3d 1303 (11th Cir.), *cert. dismissed,* --- U.S. ----, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). He is now back before us with an application requesting a certificate of probable cause to appeal, or a certificate of appealability, permitting an appeal from the district court's denial of his Fed.R.Civ.P. 60(b) motion for relief from the January 26, 1994 judgment of that court denying his 28 U.S.C. § 2254 petition. For the reasons that follow, we deny that application.

I.

The procedural history, evidence, and facts in this case are

set out: (1) in the Georgia Supreme Court's decision affirming Felker's convictions and sentence on direct appeal, *Felker v. State,* 252 Ga. 351, 314 S.E.2d 621, *cert. denied,* 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984); (2) in our opinion affirming the denial of Felker's first federal habeas petition, *Felker v. Thomas,* 52 F.3d 907 (11th Cir.), *extended on denial of rehearing,* 62 F.3d 342 (11th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 956, 133 L.Ed.2d 879 (1996); (3) in our opinion denying Felker's first application to file a second habeas petition, *Felker v. Turpin,* 83 F.3d 1303 (11th Cir.1996); and (4) in the Supreme Court's opinion dismissing Felker's petition seeking certiorari review of our decision, and denying his petition for an original writ of habeas corpus, *Felker v. Turpin,* --- U.S. ----, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). Therefore, we will limit our discussion of the procedural history to the events that have transpired since the Supreme Court's decision on June 28, 1996.

On August 30, 1996, the Superior Court of Houston County, Georgia, set September 10 through September 17, 1996, as the period during which Felker's execution would be carried out. The State scheduled that execution for 2:00 p.m. ET, September 10, 1996. On September 5, 1996, Felker filed a petition for writ of habeas corpus in the Superior Court of Butts County, Georgia. (It was his third state habeas petition.) The Superior Court denied that petition on September 6, 1996. Three days later, on September 9, 1996, the Georgia Supreme Court denied Felker's application for a certificate of probable cause to appeal that denial and denied his motion for a stay of execution. On September 10, Felker applied to

the United States Supreme Court for a stay.  The Supreme Court denied that application.  However, Felker was not executed on September 10, because he obtained a stay from the Houston County Superior Court in a separate proceeding brought under the Georgia Open Records Act, Ga.Code. Ann. § 50-18-70 to -76 (1994).

On May 2, 1996, prior to filing his third state habeas petition, Felker had filed an Open Records Act lawsuit in the Superior Court of Houston County.  In that lawsuit, Felker sought production of documents related to Felker's conviction.  On September 2, 1996, Felker filed a mandamus petition in the Georgia Supreme Court, seeking to compel the Houston County Superior Court to rule on his Open Records Act lawsuit.  On September 6, 1996, the Georgia Supreme Court entered an order requiring the Houston County Superior Court to consider and rule upon Felker's lawsuit within 48 hours.

On September 8, 1996, the Houston County Superior Court held a hearing on Felker's Open Records Act lawsuit.  At that hearing, a box of documents was turned over to Felker's counsel, and the hearing was continued to the following day.  On September 9, 1996, the Superior Court stayed Felker's execution until 2:00 p.m. ET, September 12, 1996.  On September 10, the Superior Court extended the stay of execution until 2:00 p.m. ET, September 14, 1996.  On September 12, 1996, the Superior Court, having concluded its Open Records Act hearing, denied Felker's motion for summary judgment on his Open Records Act claim, denied Felker's motion to withdraw the pending execution warrant, and denied his motion for an additional stay of execution.  Thereafter, Felker's execution was rescheduled

for 3:00 p.m. ET, September 14, 1996.

On September 12, 1996, Felker appealed to the Supreme Court of Georgia, seeking a stay of execution, review of the Superior Court's Open Records Act ruling, and reconsideration of the Georgia Supreme Court's prior denial of a certificate of probable cause to appeal the denial of Felker's third state habeas petition. On the same day, the Georgia Supreme Court stayed Felker's execution for forty days and directed the Houston County Superior Court to make findings of fact and conclusions of law regarding Felker's Open Records Act lawsuit. During the forty-day stay of execution, the Georgia Supreme Court denied Felker's motion for reconsideration.

On September 23, 1996, the Houston County Superior Court entered written findings of fact and conclusions of law, concluding that the district attorney had complied with Felker's Open Records Act request. Felker again appealed to the Georgia Supreme Court. While that appeal was pending, Felker's execution was rescheduled for 7:00 p.m. ET, November 14, 1996. On October 28, 1996, Felker filed a motion with the Georgia Supreme Court for a stay of execution. On October 30, 1996, the Georgia Supreme Court affirmed the judgment of the Houston County Superior Court with respect to Felker's Open Records Act lawsuit, and denied Felker's motion for a stay.

On November 8, 1996, Felker, acting jointly with another Georgia death row inmate, Larry Lonchar, filed a motion for a preliminary injunction and complaint for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 in the United States District Court for the Middle District of Georgia. The basis for that §

1983 action was a contention that death by electrocution is a cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. On November 12, 1996, the district court denied Felker's motion for a preliminary injunction and denied his request for declaratory and injunctive relief. He appealed, and on November 13, 1996, another panel of this Court affirmed denial of that relief. *Felker v. Turpin,* No. 96-9334, --- F.3d ---- (11th Cir. Nov.13, 1996). Thereafter, Felker filed in the United States Supreme Court a petition for a writ of certiorari and a motion for stay of execution. On November 14, 1996, the Supreme Court denied both.

On November 11, 1996, Felker filed his fourth state habeas petition, together with a motion for a stay of execution, in the Butts County Superior Court. On the following day, that court dismissed Felker's petition and denied his motion for a stay of execution. On November 12, 1996, Felker applied to the Georgia Supreme Court for a stay of execution and for a certificate of probable cause to appeal the denial of his fourth habeas petition. On November 14, 1996, the Georgia Supreme Court denied all requested relief.

On the afternoon of November 14, 1996, Felker filed in the United States District Court for the Middle District of Georgia a motion under Federal Rule of Civil Procedure 60(b)(1), (2), (3), and (6), for relief from the January 26, 1994 judgment of that court denying his 28 U.S.C. § 2254 petition. He also filed a motion for a stay of execution. The district court denied Felker's Rule 60(b) motion on two grounds. First, it held that the motion

was untimely under the express provisions of the rule itself and applicable case law. Second, the district court held that even if the Rule 60(b) motion had been timely filed under that rule itself, the court would still have denied it. The court explained that the motion for Rule 60(b) relief was tantamount to a second or successive petition, and Felker had failed to obtain from this Court an authorization to file it, as required by 28 U.S.C. § 2244(b)(3)(A), as amended. Felker applied to the district court for a certificate permitting him to appeal, and the district court denied that application, also.

Felker filed a notice of appeal, and he has now filed with us an application for a certificate of probable cause, or in the alternative, for a certificate of appealability.[1]

## II.

Felker's Rule 60(b) motion for relief from judgment was properly denied by the district court, because it was due to be treated as a second or successive habeas corpus application. 28 U.S.C. § 2244(b)(3)(A), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, requires that an applicant move in the appropriate court of appeals for an order authorizing the district court to consider such an application. Felker failed to do so. Instead, he contends

---

[1]Although Felker's actual application to this Court came only at the eleventh hour before his execution, the prior pleadings, motions, and briefs of the parties in other state and federal courts, and the opinions and orders of those courts, were lodged with this Court as they were generated. Because of that, we have been able to consider the contentions and arguments of the parties before Felker's application was actually formally filed with this Court.

that his Rule 60(b) motion should not be treated as a successive petition.  We disagree.

Although Felker argues that his Rule 60(b) motion "does not implicate any considerations of "successive' petitions," he acknowledges decisions from other circuits "that hold to the contrary, construing Rule 60(b) motions as essentially identical to successive petitions."  *See* Memorandum of Law in Support of Petitioner's Motion for Relief from Judgment at 2 n. 2 (M.D.Ga. Nov. 14, 1996).  Felker cites as examples of decisions contrary to his position *Clark v. Lewis,* 1 F.3d 814, 825-26 (9th Cir.1993) ("authority suggests, however, that where a habeas petitioner tries to raise new facts ... not included in prior proceedings in a Rule 60(b) motion, such motion should be treated as the equivalent of a second petition for writ of habeas corpus");  *Blair v. Armontrout,* 976 F.2d 1130, 1134 (8th Cir.1992), *cert. denied,* 508 U.S. 916, 113 S.Ct. 2357, 124 L.Ed.2d 265 (1993) ("a motion to remand was the functional equivalent of a second or successive habeas corpus petition, and that if such petition would be dismissed as abusive of the writ, the motion to remand should also be denied");  *Kyles v. Whitley,* 5 F.3d 806, 808 (5th Cir.1993) (citing an earlier order in that case holding that petitioner's Rule 60(b) motion was due to be denied on the ground that "a petitioner may not use a Rule 60(b) motion to raise constitutional claims that were not included in the original petition"), *rev'd on other grounds,* --- U.S. ----, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).  Then, citing no court decision in support of his position, Felker dismisses those contrary decisions as representing a "questionable practice."

What Felker fails to come to grips with is that the established law of this circuit, like the decisions he acknowledges from other circuits, forecloses his position that Rule 60(b) motions are not constrained by successive petition rules. *See, e.g., Scott v. Singletary,* 38 F.3d 1547, 1553 (11th Cir.1994) ("The district court chose to construe the [Rule 60(b) ] motion as a subsequent petition for habeas corpus and we will review the district court's denial of relief in the same light."); *Lindsey v. Thigpen,* 875 F.2d 1509, 1515 (11th Cir.1989) (stating that even if the death row inmate's claim is meritorious "the proper posture in which to raise that claim is a successive petition for habeas corpus—not in a motion pursuant to Fed.R.Civ.P. 60(b)"); *Booker v. Dugger,* 825 F.2d 281, 284-85 n. 7 (11th Cir.1987) ("We also note that the requirements of federal habeas corpus, including the abuse of the writ standard applied to successive writs, Rule 9(b), 28 U.S.C. § 2254, may properly be superimposed on this independent action [filed under Rule 60(b) ]."). Rule 60(b) cannot be used to circumvent restraints on successive habeas petitions. That was true before the Antiterrorism and Effective Death Penalty Act was enacted, and it is equally true, if not more so, under the new act. *See Felker,* --- U.S. at ----, 116 S.Ct. at 2340 ("The Act also codifies some of the pre-existing limits on successive petitions, and further restricts the availability of relief to habeas petitioners.")

Felker also argues that his Rule 60(b) motion does not bring into play the Antiterrorism and Effective Death Penalty Act amendments to the habeas statute, because the underlying ruling

that he seeks to amend, the denial of his first habeas petition, became final with the denial of rehearing on certiorari on April 15, 1996. That was nine days before the new act went into effect on April 24, 1996. However, in *Felker,* --- U.S. ----, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), the Supreme Court applied the successive petition restrictions of the new act, which are to be codified as amendments to § 2244(b), to Felker's attempt to file a second habeas proceeding after the effective date of the act, even though his first habeas petition had been filed and decided before. Likewise, we hold that the successive petition restrictions contained in the amendments to § 2244(b) apply to Rule 60(b) proceedings, even where those proceedings seek to amend a judgment that became final before the effective date of the amendments. Because Felker's Rule 60(b) proceeding was due to be treated as a second or successive habeas corpus application, and because he failed to move in this Court for an order authorizing the district court to consider that application, as he was required to do by § 2244(b)(3)(A), the district court's denial of his motion was entirely proper, and he has failed to make a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), as amended, before a certificate of appealability may be issued.

### III.

Alternatively, even if we treat Felker's application for a certificate of appealability as a request that we authorize him to file a second or successive habeas application, such a request is due to be denied, because the claims do not fall within the §

2244(b)(2)(A) or (B) exception.

## A.

All of the claims that Felker raises are *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claims, and none of them "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," as required by § 2244(b)(2)(A). Accordingly, that first exception to the bar against second petitions raising new claims is inapplicable.

## B.

The second exception is also inapplicable, because this is not a case where "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," as required by § 2244(b)(2)(B)(i). It is undisputed that Felker discovered what he asserts as the factual predicate for each of his claims as a result of his filing a Georgia Open Records Act lawsuit in May of this year. In a November 12, 1996 order, the Superior Court of Butts County, Georgia denied Felker's fourth state habeas petition, which raised claims identical to those in this proceeding. In doing so, the court found that "[a]ll of the claims in the present petition are based on information which counsel obtained pursuant to the Open Records Act proceedings," and that "[i]t is clear that counsel for Petitioner could have sought this information prior to the first state habeas petition being filed in 1984," because nothing prevented him from filing the Open Records Act lawsuit twelve years ago. *Felker v. Turpin,* No. 96-V-655, at 2 (Sup.Ct. Butts County Nov. 12, 1996) (order dismissing

petition and denying stay of execution).

Likewise, it follows that there is no reason that Felker could not have filed the same Open Records Act lawsuit before he filed his first federal habeas petition three years ago. Despite having an opportunity to do so in both his state and federal filings, Felker has not suggested any reason why such a lawsuit would not have been just as available before he filed his first habeas petition as it was after he had unsuccessfully litigated that petition.

C.

Because Felker has failed to satisfy the first prong of § 2244(b)(2)(B), we need not consider the second prong of that provision. However, for the sake of completeness, we point out that even if Felker could satisfy the subdivision (i) provision, he still could not satisfy the subdivision (ii) provision, which requires that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," § 2244(b)(2)(B)(ii).

The *Brady* claims Felker seeks to get over the second petition bar in this proceeding involve three pieces of previously undisclosed evidence turned up by his Open Records Act lawsuit. The first is a partial transcript of an interview of Katherine Gray by law enforcement officers. Some background facts about Ms. Gray and a discussion of Felker's first habeas petition *Brady* claim involving her are contained in *Felker v. Thomas,* 52 F.3d at 909-11,

*as extended,* 62 F.3d at 343. Ms. Gray did not testify at trial, and we have previously held that if she had, she would have done Felker at least as much harm as good. The reason is that she would have placed Felker with the victim, Joy Ludlam, even closer to the date of her death and in direct contradiction to Felker's own sworn testimony. *Id.*

Ms. Gray was first interviewed by law enforcement officers on December 11, 1981, and at that time she picked out of a photo spread a photograph of the man she said she had seen with the victim, Joy Ludlam. The photograph she picked out was of Felker, or at least that is what law enforcement officers told her shortly after that first photo spread, which came just days after the events she had witnessed. *See* 52 F.3d at 910 n. 2; Deposition of Katherine Gray 6, 9, 30-31, 33-34 (February 13, 1985). The partial transcript in question "if proven," *see* § 2244(b)(2)(B)(ii), would merely establish what happened when law enforcement officers re-interviewed Ms. Gray sometime after September 15, 1982.[2] While they were questioning her, Ms. Gray tried to get the officers to tell her if the picture she had picked out of the photo spread as

---

[2]The partial transcript is undated. However, in it the officers refer to Ms. Gray's having talked to some officers "last year shortly after this case" arose, which would have been in November or December of 1981. Ms. Gray had in fact talked to officers and viewed a photo spread on December 11, 1981. *See Felker v. Thomas,* 52 F.3d at 910 n. 2. For that to be "last year" the partially transcribed interview would have had to have taken place sometime in 1982. Moreover, the transcript discusses Ms. Gray's having talked with Fred Hasty, who was Felker's trial counsel. We know from Mr. Hasty's testimony in the state habeas proceeding that he first talked with Ms. Gray on September 15, 1982. Therefore, the partial transcript is of an interview that took place sometime after September 15, 1982. It is also likely that the partially transcribed interview occurred before the trial, which began in January of 1983.

the man who had been with the victim shortly before the crime was Felker. The officers did not tell her. The relevant part of the exchange is as follows:

Q: This guy that was with 'em, would you say that he's my height or taller than I am

A: I think he was a little taller than you, he had on boots

Q: A little bit taller, I'd like for you to look at these photographs and see if you see anybody that looks like him

A: This looks something like him ... but his beard, this was cut down, you know, like he had come from a barber shop

Q: Trimmed down? okay

A: I picked the wrong guy, didn't I

Q: Well, we don't know. How long do you reckon they were in the store?

A: (inaudible) less than 45 minutes, not more than 45.

Partially Transcribed Interview with Katherine Gray 4 (undated). Felker extrapolates from that one question, "I picked the wrong guy, didn't I" the conclusion that Ms. Gray actually did identify someone other than Felker as the man she had seen with the victim. That conclusion simply does not follow. The law enforcement officer questioning her did not acknowledge that she had picked out anyone other than Felker at that second photo spread, and there is no evidence that she did.

Moreover, it must be remembered that because Ms. Gray did not testify as a witness for the prosecution at the trial, we are not talking about impeachment. To the extent that the partial transcript might cast any doubt upon Ms. Gray's credibility as a witness, it is irrelevant, because she was not a witness. Instead, Felker's *Brady* claim rests upon the theory that had he been aware

of the partial transcript at the time of trial, he could have called Ms. Gray to testify that she had seen the victim in the company of a man other than Felker shortly before the victim was killed. The problem with that, of course, is that Felker has not established that she would have so testified. Even if she had, her testimony would have been thoroughly impeached and discredited by the fact that just days after the events in question, she had selected out of a photo spread a picture of Felker as the man whom she had seen with the victim. The partial transcript, if authenticated and proven to be an accurate recounting of an interview and second photo lineup session that took place at least nine months later, when "viewed in light of the evidence as a whole, would [not] be sufficient to establish by a clear and convincing evidence that ... no reasonable factfinder would have found the applicant guilty of the underlying offense," § 2244(b)(2)(B)(ii).

The second piece of new evidence that Felker discovered as a result of his Open Records Act lawsuit is a transcript of a January 22, 1982 jailhouse interview of Felker by an officer named Enckler. This transcript is relevant, Felker says, not to anything Officer Enckler testified to at trial, but instead to the testimony of another witness, Officer Upshaw. At trial, Upshaw testified that when he had questioned Felker on the night of November 25, 1981, Felker had told him that on November 24, 1981, the victim had called in sick to her work place from Felker's house.

At trial, the defense tried to get Officer Upshaw's testimony about that admission by Felker excluded as the unreliable product

of an hypnosis session that Upshaw had undergone on January 21, 1982. The trial court overruled defense objections after finding that Upshaw had an independent recollection of Felker having made that statement to him. So what does all of this have to do with the previously undisclosed transcript of Officer Enckler's January 22, 1982 interview of Felker? Everything, argues Felker, because the transcript shows that Enckler questioned Felker about making that statement to Upshaw. That otherwise unremarkable fact is made remarkable, Felker contends, because it happened just one day after Upshaw's hypnosis session. From that chronology, Felker leaps to the conclusion that Officer Upshaw must not have remembered Felker making the statement to him until Upshaw was hypnotized. Therefore, Upshaw's testimony about the statement was a product of hypnosis and should have been excluded.

In rejecting this specific *Brady* claim, the Superior Court of Butts County pointed out that, because Felker was the one being interviewed by Officer Enckler, he can hardly claim that the questions he was asked were suppressed from him by the state. At all relevant times, Felker knew what Enckler had asked him and when. *Felker v. Turpin,* No. 96-V-655, at 3 (Sup.Ct. Butts County Nov. 12, 1996).

Putting that problem with Felker's theory to the side, it is readily apparent that there are two other glaring problems with it. First, his whole theory is based on the premise that because Officer Enckler asked Felker questions about his statement to Officer Upshaw just one day after Upshaw had been hypnotized, that proves Upshaw must not have remembered Felker making the statement

until Upshaw underwent hypnosis. That conclusion simply does not follow. Another critical problem with Felker's theory about this evidence is that even if Upshaw's testimony about the statement had been excluded, the evidence against Felker still would have been more than sufficient to convict. Certainly, we cannot say of the transcript of Officer Enckler's interview of Felker that, "if proven and viewed in light of the evidence as a whole, [it] would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," § 2244(b)(2)(B)(ii).

The third piece of evidence turned up by Felker's Open Records Act lawsuit is a purported "confession" by another prison inmate, whom Felker says has a prior conviction for rape. This document, which is dated January 22, 1988, or five years after the trial, purports to be handwritten "by John Harrison for Chaplain Elliott Lyons" and bears the signature of Daniel Thomas Sylvester. The document says that Joy Ludlam, who is described as having worked as either a security guard or clerk at the Warner Robbins Holiday Inn, asked "Danny Sylvester" to tie her to the bed and kiss her, but that he got carried away and raped her. After that, according to the "confession," Ms. Ludlam said: "It's knife time," and that she was a "sacrificial lamb of God." So, according to the "confession," Sylvester then choked her and after she passed out, he cut her with a knife and used the knife to mutilate her in the anal and vaginal area. For reasons the document does not reveal, all of this is said to have taken place at Felker's house, or at his parents'

house.  No explanation is given about how Sylvester gained access to either of those two places.

This so-called "confession" is patently unreliable on its face.  Ms. Ludlam worked as a cocktail waitress, not as a security guard or clerk;  she was strangled to death, not stabbed;  and her body was not sexually mutilated with a knife.  Furthermore, there is no indication that she would have asked anyone to tie her up and kill her, but there is undisputed evidence that Felker had a proclivity for engaging in bondage and sadistic sexual practices. *Felker v. Thomas,* 52 F.3d 907, 908 (11th Cir.), *extended on denial of rehearing,* 62 F.3d 342 (11th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 956, 133 L.Ed.2d 879 (1996);  *Felker v. State,* 252 Ga. 351, 364-65, 314 S.E.2d 621, 635-36, *cert. denied,* 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).

Section 2244(b)(2)(B)(ii) requires as an initial matter that the facts asserted state a claim of constitutional error.  Because the alleged confession in this case did not exist until five years after the trial, the state cannot be charged with a *Brady* violation for failing to disclose it at trial.  At most, a post-trial confession from another person would be relevant to a *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), claim of actual innocence, and Felker has not attempted to make a *Herrera* claim in this case.  Therefore, Felker has failed to satisfy § 2244(b)(2)(B)(ii) for that reason.  In addition, even if there were a constitutional violation which could be used as a vehicle for gaining consideration of the purported confession document, there is simply no way that that document, with all of its discrepancies,

would have prevented any reasonable factfinder from finding Felker guilty of the crimes for which he was convicted.

We have also considered Felker's three *Brady* claims jointly, as well as separately, and we have considered the new evidence those claims rely upon along with all of the new evidence his earlier *Brady* claims relied upon. After doing so, we are convinced that, "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would [not] be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," § 2244(b)(2)(B)(ii). Therefore, even if Felker could not have discovered the factual predicates for the claims "previously through the exercise of due diligence," § 2244(b)(2)(B)(i), he would still not be entitled to authorization to file a second habeas petition containing the claims.

## IV. CONCLUSION

Felker's application for a certificate of appealability, taken as such, and also construed as an application, pursuant to 28 U.S.C. § 2244(b)(3), as amended, for an order authorizing the district court to consider his Fed.R.Civ.P. 60(b) motion as a second or successive petition for habeas corpus relief, is denied.